FRANKLIN L. TILESTON & another *vs.* INHABITANTS OF BROOKLINE.

Suffolk.    Jan. 29, 30. — March 5, 1883.    FIELD & W. ALLEN, JJ., absent.

The St. of 1872, *c.* 343, gave a town the right to take the waters of a river, and provided that any person, sustaining damage in his property by the taking of lands and water rights, or by the construction of any aqueducts or other works for the purposes of the act, might apply by petition for the assessment of his damages at any time within three years from the taking of said property or construction of said works, and not afterwards; and that no application should be made for such assessment of damages until the water was actually withdrawn or diverted by the town under the authority of the act. *Held*, that a petition, filed more than three years after a withdrawal of the water, by direction of the engineer of the town, acting under authority of the water commissioners, for the purpose of testing the engine, but less than three years before an actual distribution of water to the inhabitants of the town, was filed too late.

PETITION under the St. of 1872, *c.* 343, for the assessment of damages caused by the taking by the respondent of the waters of Charles River. At the trial in the Superior Court, before *Pitman,* J., the jury returned a verdict for the petitioners ; and the respondent alleged exceptions. The facts appear in the opinion.

*M. Williams & C. A. Williams,* for the respondent.

*A. Churchill & C. A. Mackintosh,* for the petitioners.

DEVENS, J.   By the act permitting the town of Brookline to take the waters of Charles River, or other source of water supply, it was provided that any person sustaining damage in his property by the taking of lands, water-rights, &c., or by the construction of any aqueducts or other works for the purposes of the act, if the amount to be paid as damages should not be agreed upon, might apply by petition for an assessment of the same to the Superior Court, " at any time within three years from the taking of the said property or the construction of dams or other works occasioning damages as aforesaid, and not afterwards." St. 1872, *c.* 343. Section 12 of the statute was as follows : " No application shall be made to the court for the assessment of damages for the taking of any water-rights, or for any injury thereto, until the water is actually withdrawn or diverted by said town under the authority of this act."

This petition was brought on May 18, 1878 ; and, as in actions to enforce a statutory liability the burden is on the plaintiff to prove all the facts which by statutory provisions are necessary to create the liability, it was for the petitioners to show that they had brought the petition within three years from the time when the water was " actually withdrawn or diverted " by the town. *New Bedford* v. *Hingham,* 117 Mass. 445.

It was a controverted question in the case whether there was or was not an actual withdrawal or diversion of the water by the respondent on May 15, 1875, in which case the petition would have been filed too late ; and, at the conclusion of the testimony, the respondent asked for a ruling, as matter of law, upon the undisputed facts, that the petitioners had not seasonably filed their petition. It appeared that E. S. Philbrick was the engineer of the respondent town, having charge of the construction of its water-works under direction of its commissioners ; that he

had oral authority from them to start the pumps for the purpose of filling the mains, which he understood to be an official direction; that on May 15, 1875, the pumps were actually started; that the mains were filled with water as far as Clyde Street, the engine pumping for several hours; and that this was done in the presence and by authority of Philbrick. Philbrick testified that the pumps were on that day started by him for the purpose of supplying the town with water; but there was evidence from the manufacturers of the engine and their servants, that, while water was pumped into the mains, the object of the pumping was to ascertain whether the engine performed its functions properly, as its acceptance by the town depended upon this and a subsequent test. There was no evidence of pumping on the 16th, 17th or 18th day of May; nor was there any actual distribution of the water until after the latter date to the inhabitants. If we accept this evidence in the aspect deemed by the petitioners most favorable to themselves, and treat the pumping by which the mains were filled on May 15, 1875, as an act done by the contractors to test the working of the engine, it was done in the presence and with the consent of the engineer of the town, acting by authority of the commissioners; and it is to be determined whether this constitutes an actual withdrawal or diversion by the town, under the authority of the statute.

That it was the intention of the statute to give to the water owner a full and complete statutory remedy for any damages he might sustain by reason of the withdrawal of the water, will not be doubted. It must have been considered that, beside the immediate purpose of distribution, there were certain preliminary purposes incidental thereto which would necessarily precede the actual distribution, such as testing the working capacity of the engine, ascertaining by the use of water whether there were leakages in the pipes, and rinsing and cleansing the mains. A withdrawal of the water for these purposes could not be made without affecting the property of the owners of the water-rights, and must be deemed a withdrawal or diversion under authority of and for the purposes of the statute. Unless this is so, certain acts necessary to be done in the progress of the work of providing the water supply are to be held as tortious, for which the statute provides no remedy and for which the town must be

responsible in a suit for damages. Had the petitioners brought their petition on May 16, 1875, the respondent could not, we think, have successfully defended upon the ground that the only purpose for which water had been withdrawn was to test the engine or fill and cleanse the mains, and that therefore there was no actual withdrawal or diversion of the water for which the statute remedy existed. The inconvenience of a construction which, under the circumstances supposed, would treat the town or its agents as trespassers, or would deprive the petitioners of a statutory remedy, is obvious, and we find nothing in the language of the statute which requires it.

If pumping the water and filling the mains immediately by its own servants in testing its engine would have been an act which, on the part of the town, would have constituted an actual withdrawal or diversion of the water, it is not the less so when, acting under the authority of its appropriate agents in the execution of the powers conferred, the contractors who construct the engine thus use the water.

We are of opinion that the respondent was entitled to the ruling requested by it, and the instruction as actually given was liable to the serious objection that it might be inferred therefrom that, if water were withdrawn only to test the engine or fill the mains, it would not be such a withdrawal as the statute contemplated, and for which it afforded a remedy.

*Exceptions sustained.*