## INHABITANTS OF NORTHBOROUGH *vs.* COUNTY COMMISSIONERS.

Worcester.   Oct. 3, 1884. — Jan. 9, 1885.   C. ALLEN & COLBURN, JJ., absent.

The St. of 1882, *c.* 192, gave a town the right to take certain waters, or so much thereof as might be necessary, and the water rights connected therewith, and lands; and provided that the town should, within ninety days after the taking of any lands or water rights, file in the registry of deeds a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same was taken. A subsequent section of the act provided that a person injured in property under the act might have the same assessed by an application in writing within one year after the taking of such land or water right, but not thereafter; and that no assessment for damage should be made for the taking of any water right until the water was actually withdrawn or diverted by the town under the authority of the act. *Held,* that an application for injury to a water right, filed more than a year after the right had been taken, but within a year after the description was filed in the registry of deeds, was filed too late.

A town authorized by a special statute to take water and water rights, and required to file a description thereof, filed a paper containing a recital that "whereas" the town has erected a dam across a certain brook, and has taken and appropriated the water from said brook and water rights connected therewith above said dam, followed by the sentence, "The water so taken as aforesaid is for the purpose of supplying the town with pure water." *Held,* that the description was sufficient, and that it applied to water rights below the dam as well as to those above.

A town authorized by a special statute to take water and water rights, and required to file a description thereof within ninety days, built a dam across a stream in 1882, and filed a paper about six months afterwards reciting the taking, and that the town "within ninety days after said taking hereby files" a description thereof. By the terms of the statute, a person injured by a taking under the statute was required to file an application for damages within a year after the taking. A petition was filed on the last day of the year after the filing of the description. *Held,* that, if the town was estopped by the declarations in the description, it could still refer the taking to the earliest point of time consistent with the instrument; and that the petition was filed too late.

HOLMES, J.   This is a petition for a writ of certiorari to quash a judgment in favor of one Ranlett for water rights taken under the St. of 1882, *c.* 192.\*   Ranlett's petition was filed on

---

\* Section 2 of this act provides that the town of Northborough "may take and hold the water, or so much thereof as may be necessary, with the water rights connected therewith," of certain streams, and may take lands, and erect dams, &c. It further provides that the town "shall within ninety days after the taking of any lands, water sources, or water rights, as aforesaid, otherwise than by purchase, file in the registry of deeds for the county

June 16, 1884. The water was actually withdrawn on December 12, 1882, by closing the gates of a reservoir which had been built under the act just mentioned; so that Ranlett's petition was not filed "within one year after the taking of such water right," as required by the act, (§ 3,) if the actual withdrawal of the water is the taking referred to. We have no doubt that it is, and we think that no argument can make the meaning of the act much clearer than its own language does.

The respondents' contention, that the taking is the filing of the description of the rights taken in the registry of deeds, tacitly assumes that the word "taking" in the passage just quoted from § 3 has a different meaning from the same word in § 2; an assumption which is not justified. We cannot do better than repeat the words of Mr. Justice Bigelow in *Moore* v. *Boston*, 8 Cush. 274, 276: "It is the taking of the land [here, of the water rights] which gives the party injured a right to damages. By [§ 2] the taking of the [water right] and the filing of a description of it in the registry of deeds are two separate and distinct acts. The former must precede the latter. The taking is first to be made, and within [ninety] days after it, the description is to be filed. It is difficult to see how, under this explicit provision, the filing of the description of the [water right] taken can be made the taking itself. The act of taking is to be first accomplished, and after it is done, the evidence of it, in the form of a description, is to be filed in the registry of deeds. Such seems to be the natural import of the language of the statute."

---

of Worcester a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same is taken," &c.

Section 3 provides that the town "shall be liable to pay all damages sustained by any person or corporation in property by the taking of any land, water source, or water right, or by the construction of any aqueduct, reservoir, or other works." It further provides that "any person or corporation injured in property under this act," and failing to agree with the town as to the amount, may have his damages assessed, "the application therefor to be made in writing within one year after the taking of such land, water source, or water right, or other injury done as aforesaid, but not thereafter. No assessment for damage shall be made for the taking of any water right, or for any injury thereto, until the water is actually withdrawn or diverted by said town under the authority of this act."

It may be admitted that, if there had been no actual taking, the filing of the description in the registry might conclude the town, and, at least in regard to lands, might fix the date from which the year would begin to run.  *Moore* v. *Boston,* 8 Cush. 277.  *Ham* v. *Salem,* 100 Mass. 350, 351.  Indeed, the dicta or intimations in *Lewis* v. *Boston,* 130 Mass. 339, and *Chandler* v. *Jamaica Pond Aqueduct,* 114 Mass. 575, 577, led the counsel for the petitioner partially to concede that the filing would fix the beginning of the year in any case for land.  However this may be, we can feel no doubt as to the meaning of the act with regard to water rights, and our construction is confirmed by the further provision in § 3, that " no assessment for damage shall be made for the taking of any water right . . . . until the water is actually withdrawn."  See *Ipswich Mills* v. *County Commissioners,* 108 Mass. 363, on the St. of 1864, *c.* 268, § 11;  *Tileston* v. *Brookline,* 134 Mass. 438.

From the view which we have taken it becomes unimportant whether the description filed on March 8, 1883, was sufficient or not.*  For, although the filing may have been a condition subsequent, which the petitioner would have had to show had been complied with if it had been sued in tort and had justified under the statute, as in *Wamesit Power Co.* v. *Allen,* 120 Mass. 352,

---

* This description contained the following:

" Whereas the town of Northborough of the county of Worcester and State of Massachusetts, in the exercise of powers conferred by chapter 192 of the Acts of 1882, being an act entitled ' An Act to supply the town of Northborough with water,' and accepted by said town of Northborough in accordance with the provisions of said act, has heretofore erected a dam across Cold Harbor Brook in the northeasterly part of Shrewsbury, in said county of Worcester, near the highway, above Straw Hollow, so called, at or near a boundary line between Shrewsbury and Boylston, and thereby formed a reservoir of water, and has constructed an aqueduct for the conveying of water to said town of Northborough, and has taken and appropriated the water from said Cold Harbor Brook, and water rights connected therewith above said dam as may be necessary for supplying the town of Northborough with water according to the act aforesaid, and is now in the exercise of the powers aforesaid.  The said Cold Harbor Brook from which the water is so taken and appropriated flows by the Fay Mills, so called, and through the land of Bridget Kelley and John T. Andrews in said Shrewsbury to said reservoir.  The water so taken as aforesaid is for the purpose of supplying the town of Northborough with a necessary supply of water according to the act aforesaid."

and in *Lund* v. *New Bedford*, 121 Mass. 286, in this case Ran-
lett treated the taking as lawful, proceeded under the statute,
and was therefore bound to proceed within the statutory time.
We may add, that the cases last cited are further authorities to
show that the taking and the filing are distinct matters.

But furthermore we are of opinion that the objections made
to the description are unsound. It is true that it begins with
a "whereas," and that, according to the punctuation, there
is no conclusion. But, if this be material, it may be remedied
by neglecting the periods, and reading the description as the
introduction to the statement of the purpose for which the water
is taken. The words, "has taken and appropriated the water
above said dam," cover the water rights below the dam which
are interfered with. The only interference with them is the
withdrawal of the water described.

A second description was filed on June 16, 1883,* and it is
this that the respondents rely upon to make out that Ranlett's
petition was filed in time. But the argument based upon it fails,
when it is determined that filing the description is not the tak-
ing. To be sure, it might be said that the instrument estopped
the town to set up anything inconsistent with its contents. And
if the second description had set forth a taking of its date, we
might have had to consider whether the powers given by the act

---

* The material parts of this paper were as follows:

"Whereas the inhabitants of the town of Northborough, at a town meet-
ing held at said Northborough, June 12th, 1882, by virtue, and in exercise,
and in part execution, of the powers conferred by chapter 192 of the Statutes
of 1882, and of any and all powers thereto by law enabling, did elect Samuel
Wood, D. F. Wood, and Cyrus Potter a board of water commissioners of and
for said Northborough. And whereas the inhabitants of said town of North-
borough, at another town meeting held in said Northborough, March 27th,
1883, by virtue, and in exercise, and in part execution of the powers con-
ferred by said chapter, and of any and all powers thereto by law enabling,
for the purpose of supplying said town and the inhabitants thereof with pure
water, and for the purpose of holding and preserving the same, did vote to
take and appropriate the following described stream, water rights, rights of
flowage and lands, to wit: First. The waters of Cold Harbor Brook, so
called, at the dam constructed by authority of said town, across said brook,
on land recently purchased by said town of Bridget Kelley and Geo. D. Rice,
situate partly in Shrewsbury and partly in Boylston, and southerly of the
town road over said Cold Harbor Brook, just below said dam, and all the
waters of said brook and of the tributaries of said brook and the water supply

had been exhausted, and, if not, whether it did not sufficiently appear that the purport of the later instrument was only to correct apprehended defects of form in the earlier one.   But the most that can possibly be gathered from the second instrument is that the taking was within ninety days before, while it also shows that the dam and reservoir by which the water was actually withdrawn were already built by authority of the town at the date of their meeting, March 27, 1883.   If therefore the petitioner is estopped by its declarations, which we do not intimate, it can still refer the taking to the earliest point of time consistent with the instrument.   The withdrawal of the water has been continuous since December 12, 1882, so that there is no difficulty such as might have been raised by a cessation in the use after the first taking.   As Ranlett's petition was filed the last day of the year following the filing of the second description, it was too late, unless the taking was on the same day that the description was filed.

It is not disputed that the action of the county commissioners was void, if the petition was filed after the year had run.   *Cambridge* v. *County Commissioners*, 6 Allen, 134, 136.

*Certiorari to issue.*

*G. F. Hoar & W. A. Gile,* for the petitioner.
*W. S. B. Hopkins & F. P. Goulding,* for the respondents.

---

of said brook above the lower side of said dam.   Second. All the land situate partly in Boylston and partly in Shrewsbury conveyed to the town for the purposes aforesaid by Bridget Kelley, Geo. D. Rice, and John T. Andrews, and upon which said dam now stands, and the reservoir flowed by the same and bounded and described as follows."   Then followed a description of the land by metes and bounds.   " And all land used in the construction of the aqueduct leading from said reservoir.   Now, therefore, be it known that the said town of Northborough by said vote and such other legal proceedings as were necessary in the premises, and by its said board of water commissioners, thereto duly authorized, and said board of water commissioners by authority of said town and of said act, have taken and appropriated said stream, water rights, and rights of flowage above said dam and said lands, for said purposes, and by virtue and in exercise and in part execution of the powers aforesaid, and said town of Northborough within ninety days after said taking hereby files in the registry of deeds for the county of Worcester the foregoing description thereof and statement of the purpose for which the same was taken, signed by its water commissioners aforesaid, thereto duly authorized and in pursuance of the requisitions of said act."