INHABITANTS OF ROCKPORT *vs.* NATHANIEL WEBSTER.

Suffolk.    June 29, 1899. — October 19, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER,
& HAMMOND, JJ.

*Waterworks — Eminent Domain — Validity of Taking by Town of Water of
Great Pond — Right of Public to continue Cutting of Ice on Pond — Equity.*

A statute authorized a town to take the water of a certain pond for the purpose of
supplying itself and its inhabitants with water; provided that all such authority
granted to the town should be vested in commissioners, who should be sub-
ject to such instructions as the town might impose by its vote; and required
that a certificate signed by the commissioners describing the property taken
should be filed in the registry of deeds.  The town instructed the commission-
ers by vote to take in behalf of the town "any and all rights of way, water
rights, water sources, and easements which may be necessary for the purposes
of the town in carrying out the provisions" of the statute, and also all necessary
lands ; and the town voted also to "take the waters of" the "pond and its tribu-
taries, and from springs and underground and surface waters adjacent thereto,"
and authorized the commissioners "to take necessary steps and do all necessary
acts thereto for and in behalf of the town."  The certificate filed by the commis-
sioners, after reciting the acceptance of the statute by the town and the election
of the commissioners, stated that the town "did vote to take and hold the waters
of" the "pond . . . and the waters which flow into the same, and the springs
and water sheds which supply the same, and the water rights and water sources
connected therewith."  *Held,* that the taking was valid.

A town, which by statute is granted the right to take the water of a great pond for
the purpose of supplying itself and its inhabitants with water for the extinguish-
ment of fires and for domestic and other purposes, cannot maintain a bill in
equity to restrain an owner of land on the shores of the pond from cutting ice
thereon, if it is not shown that the exercise of the public right so to cut ice is
inconsistent with the purposes of the grant to the town.

BILL IN EQUITY, filed February 3, 1898, in the Superior
Court, to restrain the defendant from cutting ice on Cape
Pond in the plaintiff town.  Hearing before *Hardy,* J., who
reported the case for the determination of this court, in sub-
stance as follows.

The plaintiff contended that it had taken and owned the
waters and water rights of Cape Pond by virtue of the votes
of the plaintiff. in a town meeting under the provisions of St.
1894, c. 78, and introduced the record of such votes, by the
first of which the commissioners were instructed to take in

behalf of the town "any and all rights of way, water rights, water sources, and easements which may be necessary for the purposes of the town in carrying out the provisions" of the statute, and also all necessary lands; and by the second of which the town voted to "take the waters of Cape Pond and its tributaries, and from springs and underground and surface waters adjacent thereto," and authorized the commissioners "to take necessary steps and do all necessary acts thereto for and in behalf of the town."

The plaintiff introduced also a certified copy of the description of the property and water rights which it claimed to have taken, and which was filed in behalf of the plaintiff in the registry of deeds on June 9, 1894, which, after reciting the acceptance of the statute by the town and the election of water commissioners, stated that the town "did vote to take and hold the waters of Cape Pond . . . and the waters which flow into the same, and the springs and water sheds which supply the same, and the water rights and water sources connected therewith."

The defendant called the secretary and a member of the board of water commissioners of the plaintiff town for the year 1894, who testified that the board did nothing on or before June 9, 1894, to perfect or secure the plaintiff's rights, except to prepare and cause to be filed the certificate above mentioned.

Cape Pond is a great pond of forty-eight acres in area; and the water rights therewith connected were legally taken by vote of the town in a meeting duly called by a proper warrant on April 23, 1894, under and by the provisions of St. 1894, c. 78, which act had been legally accepted by the town; and a true and proper description of the property and water rights taken was filed by the water commissioners of the town, duly elected and properly authorized therefor, in the registry of deeds, on June 9, 1894.

The town by its water commissioners established water works and began the diversion or pumping of the waters of Cape Pond for its use by reason of the taking under the act on December 30, 1894, and is now continuing such use.

"I find, as matter of law, that the cutting of ice by the defendant is inconsistent with the rights acquired by the plaintiff

under § 9 of said chapter, in the pond, and that the town has such control over the waters of the pond that it may prevent the defendant from cutting ice thereon.

" If the vote of the town on April 23, 1894, was not a taking of the waters or water rights of Cape Pond, I find that the town failed to comply with § 3 of said act, and did not file and cause to be recorded, within sixty days after the taking of the water rights, water sources, or easements in the pond, in the registry of deeds for the county and district within which the same were situated, a description thereof sufficiently accurate for identification, with a statement of the purpose for which the same were taken, signed by the water commissioners."

The plaintiff, at a town meeting duly called on March 1, 1897, voted that " John B. Hodgkins & Co., and F. H. Abbott & Co., be permitted to cut and harvest ice in Cape Pond under the following condition: That the Rockport Water Commissioners appoint an inspector whose duty shall be to see that the waters of said pond are not polluted in any manner. Said inspector to be paid by Hodgkins and Abbott for the time he is employed while said parties are cutting and harvesting ice. . . . That the sum of ten cents per ton shall be paid for all ice cut and harvested in Cape Pond." The parties referred to in the vote have cut and harvested ice on the pond, and the plaintiff had, before filing this bill, presented a bill to the defendant and demanded payment of money by reason of the ice he had cut on this pond since its use by the plaintiff as a water supply.

It was not contended by the plaintiff that the cutting of the ice on the pond by the defendant caused any serious pollution of the waters of the pond, and "I find that such business has not caused such pollution and is not likely to do so, to the injury of the rights or the health of the inhabitants using such waters, as the business has been conducted up to the present time. I do not find, as a fact, that the cutting of ice by the defendant before the filing of this bill has interfered with the town's use of such waters for the purpose of the taking, given by the act, and I do not find that such cutting of ice in the future will have a tendency to interfere with such use by the plaintiff town, unless it may be found in law that the town has the right to dispose of the ice on the pond by sale to any purchaser of the

same. I find that the defendant had been, for some years previous to such taking, a riparian owner of lands upon the shores of the pond, with an established ice business thereon consisting in the cutting and preparing of ice for sale." A decree was entered for the plaintiff in accordance with. the prayer of the bill. If such decree was right, the same was to be affirmed; otherwise, such decree was to be entered as law and justice might require.

The case was submitted on briefs to all the justices except *Loring*, J.

*W. A. Pew, Jr.*, for the defendant.

*S. D. York & F. H. Tarr*, for the plaintiff.

HAMMOND, J. Subject to reasonable regulations the defendant, as one of the public, has the right to take ice from Cape Pond unless that right has been taken away by the authority of St. 1894, c. 78. *West Roxbury* v. *Stoddard*, 7 Allen, 158.

That statute authorizes the town to supply itself and its inhabitants with water for certain purposes, and to that end to take the water of this pond. It contains the usual provisions of such statutes, and provides in the tenth section that " all the authority granted to the town by this act and not otherwise provided for shall be vested in a board of water commissioners, who shall be subject, however, to such instructions, rules, and regulations as said town may impose by its vote." It thus appears that the authority to take the water of the pond is vested in these commissioners. In other words, the taking, although for the benefit and at the expense of the town and its inhabitants, must be by the commissioners. It is an act in the exercise of eminent domain, and must be done by the public officers to whom the power has been specially given. While it is true that in the exercise of this power the commissioners are bound to a certain extent by the instructions of the town (*Lexington Print Works* v. *Canton*, 167 Mass. 341), still, whether so instructed or not, the act of taking is to be performed by them, and in the absence of instructions they may proceed to take according to their discretion. *Stoughton* v. *Paul*, 173 Mass. 148.

The statute further provides that in case of a taking a certain

certificate signed by the commissioners containing a description of the thing taken shall be filed in the proper registry of deeds.

The first question is whether there has been a valid taking of the water of Cape Pond.

Although the report states that the court found that the water of the pond was taken, still we understand that finding to be in substance a ruling of law that by the vote and certificate it sufficiently appears that thère was a valid taking; and we think that the question whether that ruling is correct, or, in other words, whether the taking was valid, is open upon this report.

The act of taking must be performed by the commissioners. It must be conceded that the votes of the town and the certificate filed by the commissioners are not as clear and unambiguous as might be desired.

By the first vote the commissioners are instructed to take in behalf of the town " any and all rights of way, water rights, water sources, and easements which may be necessary for the purposes of the town in carrying out the provisions " of the statute, as also all necessary lands; and by the second vote the town votes to " take the waters of Cape Pond and its tributaries, and from springs and · underground and surface waters adjacent thereto," and authorizes the commissioners " to take necessary steps and do all necessary acts thereto for and in behalf of the town."

The certificate filed by the commissioners, after reciting the acceptance of the statute by the town and the election of the commissioners, declares that the town " did vote to take and hold the waters of Cape Pond . . . and the waters which flow into the same, and the springs and water sheds which supply the same, and the water rights and water sources connected therewith."

It will be observed that the certificate does not follow the language of the second vote of the town. It is somewhat broader, including among other things the words " water rights," which are mentioned only in the first vote, which is clearly in the nature of an instruction to the commissioners.

It is to be remembered that under the act the town could only instruct, and the commissioners were bound by such instructions;

and it is proper to assume that both the town and the commissioners intended to act in accordance with their respective powers and duties; and their proceedings are to be so interpreted as to carry out their intentions, if such an interpretation be reasonably possible.

In view of these considerations we think that effect may be given to the proceedings by interpreting the second vote of the town not as an attempt to make thereby an actual taking by the town, but simply as an expression of a determination that the waters therein described should be taken, and an instruction to the commissioners to take the necessary steps to carry into effect that determination, and by interpreting the certificate of the commissioners as a statement by them that in accordance with such vote, as well as in accordance with the second vote, certain waters and water rights were taken by the authority of the statute, or, in other words, by the commissioners so far as their authority was necessary to make the taking valid.

In this way due effect is given to the votes of the town and the certificate, and the intention both of the town and of the commissioners is carried out.

The certificate is sufficient proof of a taking, and is conclusive upon all concerned. *Moore* v. *Boston*, 8 Cush. 274, 277. *Ham* v. *Salem*, 100 Mass. 350. *Northborough* v. *County Commissioners*, 138 Mass. 263, 265. The taking must, therefore, be regarded as valid.

The remaining question is as to its effect upon the right of the public to take ice from the pond.

While it is true that the defendant is a riparian owner of lands upon the shores of the pond, with an established business of cutting and storing ice for sale, still, in the absence of any grant from the Legislature, or by prescription, he has no peculiar right thus to cut ice, and he must stand or fall in that respect with the general public. *Hittinger* v. *Eames*, 121 Mass. 539.

When private property is taken in the exercise of the right of eminent domain, the taking must be limited to the reasonable necessities of the case, so far as the owners of the property taken are concerned. Cooley, Const. Lim. 664.

In *Harback* v. *Boston*, 10 Cush. 295, the principle was thus stated by Shaw, C. J. The tenth article of the Declaration of

Rights " was intended to secure rights of individual owners, and prescribe the duty of the Legislature ; and a power is given to provide for an exigency, and is warranted only by the existence of such exigency; the plain rule of equity is, that it shall be restrained and limited by the extent of such exigency.  When, therefore, the Legislature, being vested with the exercise of this high power, use language not precise and explicit, but open to construction, and if one construction would convey the power beyond the limit necessary to meet the public exigency, and another construction would limit it by the extent of such exigency, we think the latter ought to be adopted, as the one intended by the Legislature."

And the same rule applies to public grants.  In *Attorney General* v. *Jamaica Pond Aqueduct*, 133 Mass. 361, the rule was thus stated by Morton, C. J.:  " In this country, as in England, a grant from the sovereign power is to be construed strictly against the grantee.  Nothing will be included in the grant except what is granted expressly or by clear implication."  Whether, therefore, the statute giving the right to take the water of the pond was simply a grant to the town of certain public property, or whether it was passed in the exercise of the right of eminent domain, the rule of construction is the same.  " Nothing is included except what is granted expressly or by necessary implication."

Upon looking into the statute it appears that the first and second sections contain a statement of the express grant.  Section 1 provides that the town " may supply itself and its inhabitants with water for the extinguishment of fires and for domestic and other purposes ; may establish fountains and hydrants, relocate or discontinue the same ; may regulate the use of such water and fix and collect rates to be paid for the use of the same."

Section 2 describes the sources of supply, and grants authority to take such lands and other property and to build such structures as may be necessary to gather, preserve, and distribute the water.

The purpose of the grant is an important element in determining its nature and the necessary implications.

Here is a grant to take water of the pond for the use of the town and its inhabitants.  It is of the utmost importance that

the water should be kept pure, and that there should be a liberal and never failing supply. The water may be freely and lavishly used by the town and its inhabitants. The right to this use is paramount, and by necessary implication every public or private right inconsistent with the most stringent measures to preserve the purity of the water, or the most liberal use of the water, provided always such measures and such use be within the bounds of reason, must yield to that right.

But the town by the taking does not become the absolute owner of the waters of the pond, nor can it use the same for any other purposes than those named in the act, and all public and private rights not inconsistent with the existence of the right granted remain as before.

In a similar taking of the waters of Sudbury River and its tributaries it was said by Ames, J., that " the riparian proprietors . . . retain all their common law rights . . . so far as they are not inconsistent with the use defined in the statute. They certainly are not prohibited from drawing water from the river for domestic purposes, or from watering cattle in it, or from cutting ice." *Dwight Printing Co.* v. *Boston,* 122 Mass. 583, 587.

It is true that in an action by a mill owner for damages under a statute like this, the town, having made a taking of the whole water of the pond, must pay damages as if the whole were actually to be diverted under the statute. Not the amount diverted or likely to be diverted, but the amount described in the certificate of taking, is the amount assumed to be lost to the mill owner. *Ætna Mills* v. *Waltham,* 126 Mass. 422. *Howe* v. *Weymouth,* 148 Mass. 604. In such a case the town is estopped to say that it has taken more than it needs.

Besides, in making any public grant the State may impose such terms as it sees fit. It may relieve the grantee from the payment of any damages for the taking of public property, or it may require compensation to be made to private persons where no legal right has been interfered with, as in some cases where land is taken for railroads and other public works. *Parker* v. *Boston & Maine Railroad,* 3 Cush. 107. *Trowbridge* v. *Brookline,* 144 Mass. 139. It is also important that damages should be assessed once for all. *Ipswich Mills* v. *County Commissioners,* 108 Mass. 363.

We cannot say as matter of law that in every taking of the water of a great pond for purposes like those enumerated in this statute every public right theretofore existing in the water and its use is inconsistent with the grant, and is therefore abolished. Much depends upon the actual needs of the town, and the nature of the public right sought to be availed of, as well as other circumstances.

In the present case the court has found that the cutting of ice upon the pond of the defendant has not caused " pollution and is not likely to do so to the injury of the rights or the health of the inhabitants using such waters as the business has been conducted up to the present time." And it does not find " as a fact, that the cutting of ice by the defendant before the filing of this bill has interfered with the town's use of such waters for the purpose of the taking, given by the act," nor " that such cutting of ice in the future will have a tendency to interfere with such use by the plaintiff town, unless it may be found in law that the town has the right to dispose of the ice on the pond by sale to any purchaser of the same."

In view of this finding, the plaintiff has failed to show that the exercise of the public right to cut ice upon the pond is inconsistent with the purposes of the grant, and so cannot maintain this bill.

To prevent misapprehension it is proper to add that this decision is not inconsistent with the right of the plaintiff to have an injunction against the cutting of ice on the pond, if it appears in the future that the exercise of the right injuriously affects or is likely to affect the purity of the water.

*Bill dismissed.*