GARDNER WATER COMPANY *vs.* INHABITANTS OF GARDNER.

Worcester. January 21, 1904. — February 26, 1904.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & BRALEY, JJ.

*Great Pond. Waterworks. Gardner.*

The Legislature has power to give to a private corporation the right to use and sell the waters of a great pond in supplying the inhabitants of a town with water.

The Gardner Water Company was granted by St. 1882, c. 145, the right to take the waters of Crystal Lake, a great pond, and by § 9 of that act the town of Gardner was given the right to purchase the corporate property and all the rights and privileges of the Gardner Water Company at a price to be fixed by commissioners if the corporation and the town were unable to agree. The town having exercised its option of purchase, commissioners appointed under that section, ruled, that the corporation was entitled to the fair value, at the time of the exercise of the option, of the right to use and sell the waters of Crystal Lake for the purpose of furnishing the inhabitants of the town with water. *Held,* that the ruling was correct.

PETITION, filed June 17, 1902, under St. 1882, c. 145, § 9, for the appointment of three commissioners to determine the price to be paid by the town of Gardner for the corporate property, rights and privileges of the Gardner Water Company.

On August 19, 1902, Hosea M. Knowlton, James F. Jackson and George W. Wiggin were appointed such commissioners. On January 27, 1903, after the death of Mr. Knowlton, Nathan Matthews Jr. was appointed in his stead. The commissioners filed their report on August 12, 1903.

The case came on to be heard before *Braley*, J., who, at the request of the parties, reserved it on the pleadings, the report of the commissioners and the objections of each party thereto, for determination by the full court.

*E. C. Bumpus,* (*T. B. Dunn & J. B. Sullivan,* Jr. with him,) for the petitioner.

*J. A. Stiles,* (*W. P. Hall* with him,) for the respondent.

KNOWLTON, C. J. The questions before us arise on the report of commissioners appointed to determine and award the compensation to be paid by the town of Gardner for the corporate property, rights and privileges of the Gardner Water Company, acquired by purchase by vote of the town under the authority of the St. 1882, c. 145, § 9. This statute is the charter under which this corporation was duly organized, for the purpose of furnishing the inhabitants of Gardner with water. By § 2 of the statute, the corporation was authorized to "take, hold and convey into and through the town of Gardner, or any part thereof, the water, so far as may be necessary for the purpose, of any spring or springs, or of Crystal Lake, so called, within said town, and the waters which flow into and from the same, together with any water rights connected therewith," etc. Section 3 directs that it shall, " within sixty days after taking any land or water rights under the provisions of this act, file and cause to be recorded in the registry of deeds for the county of Worcester a description " thereof and the " title of the land and water rights so taken shall vest in said corporation." On July 24, 1882, it filed in the registry of deeds a taking of " the waters so far as may be necessary for the purposes hereinafter mentioned, of ' Crystal Lake ' so called, a great pond . . . and the waters which flow into and from the same, together with any water rights connected therewith, . . . for the purpose of supplying the inhabitants of Gardner with pure water," etc. It then constructed waterworks, which were in operation when the town of Gardner, under § 9 of this statute, voted to purchase " the corporate property and all the rights and privileges of said Gardner Water Company," the price to be paid for which these commissioners were appointed to determine.

The commissioners, in that part of the report which deals with the water rights of the petitioner, ruled as follows : that the corporation " was entitled, whenever the town of Gardner should take advantage of the option of purchase granted to it by sect. 9, to the fair value at that time of the right to use and sell the waters of Crystal Lake (and any other waters that may have been acquired by the company under the provisions of sects. 2 and 3) for the purpose of furnishing the inhabitants of

the town of Gardner with water for the purposes enumerated in sect. 1; subject to the right of the State to regulate the rates charged by the company (but not to establish rates so low as to be obnoxious to the provisions of the State or Federal Constitutions), to authorize competition (either public or private) from water sources other than those held by the company, to revoke the company's right to use the public ways of Gardner for its pipes and hydrants (thus leaving the company with the right only to sell its waters wholesale to a distributing company or the town, or to distribute through pipes laid exclusively on private land), to revoke the company's charter, to dispose of any part of the waters of the lake not required for the supply of the inhabitants of Gardner, to control, lease, or sell the use of the lake for fishing, boating, ice cutting, and other purposes not interfering with its use for a water supply in Gardner, to control the operations of the company and its use of the water of the lake to the extent reasonably necessary to protect the purity of the water, and otherwise to exercise over the company the police power of the State within the limits set by the State and Federal Constitutions. . . .

" In adopting this basis of valuation, we assume that the Legislature contemplated that the town, in purchasing the property, rights and privileges of the company would act in its private or proprietary capacity as a business corporation, and that the price should be fixed as if the purchase authorized by sect. 9 was to be made by a private corporation.

" We include in the expression ' water rights' as used in this ruling all the rights, privileges and franchises obtained by the company under its charter to sell and distribute the waters of Crystal Lake in the town of Gardner, except the right to lay and maintain pipes, etc., in the public streets, the right to take property by eminent domain, and the other rights considered separately below in 7.

" In valuing the company's water sources as defined above, the control and rights of the State in or over the same as therein set forth are to be borne in mind, as also the probability or improbability that these powers will in fact be exercised."

The respondent town objects to this part of the report, and the ground of its objection is stated in a motion to recommit, in

part as follows : " That the sole source from which the company obtained water to supply the town of Gardner was a source that was *publici juris;* that the title which the State had in this lake and its waters was held in trust by the State for the public; that the public owned or was entitled to the entire beneficial use of the waters of the lake; that the power of the State was limited to regulating the public uses to which the lake might be put and in deciding between two inconsistent uses ; that the provisions of St. 1882, c. 145, so far as these provisions have reference to Crystal Lake, did not operate to confer upon the company, (a) any proprietary rights whatsoever, (b) any rights in or to the lake or the waters thereof for which it was entitled to receive any sum of money whatever ; that a grant by the State of rights in or to the lake or the waters thereof which entitled the company to a valuation on the basis set forth in the report would deprive the public of that beneficial use to which it is entitled ; that the grant or authority contained in said St. 1882, c. 145, was conferred with an implied reservation of the public right, and that such implied reservation is inconsistent with any right on the part of the company to have the lake or its waters or any rights therein valued as a part of the corporate property or as one of its rights and privileges ; that said ch. 145 was in effect a regulation and determination as to different and inconsistent rights and uses to which the company was entitled; that the provisions of said ch. 145 conferred upon the company (a) merely a loan of the waters, (b) a permission to perform the service of delivering the water to a part of the public entitled to it which the Legislature did not intend should be included in the valuation in case the town voted to purchase as authorized by sect. 9 of said ch. 145 ; that the rights, if any, in and to the waters of Crystal Lake, of whatsoever nature, passed to the town under the vote taken April 26, 1902, as provided in said sect. 9 ; that the said rights were and are public rights for which nothing can be recovered in money by the company from the town," etc.

By the statute, the price to be paid is the fair value of the corporate property and all the rights and privileges of the corporation, without the limitation in reference to rights under the franchise which has been imposed in some recent statutes pro-

viding for similar purchases. See St. 1894, c. 474, § 2; St. 1895, c. 451, § 16; *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541; *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365. In the last part of § 9 the transaction is referred to as a purchase of "said franchise and property."

The respondent in its argument relies chiefly upon the fact that the water rights granted are to use the waters of a great pond. It is true that such ponds are held by the Commonwealth for the benefit of the public, and it is not to be presumed that the Legislature would attempt to make any disposition of their waters inconsistent with the interests of the public. In this case we have no nice question as to the power of the Legislature to grant such property to an individual solely for a private use, for the grant to the petitioner was for an important public use. Of the power of the Legislature to give to a private corporation, as well as to a city or town, water rights in a great pond, to be used in supplying inhabitants with water, there can be no doubt. This power has been exercised many times in Massachusetts. The rights and privileges of this corporation in the water, under the charter, are similar to the rights of a railroad company in the land taken for its roadbed. Such land can be taken and held only for a public use; but the corporation has a valuable right of property in it. While the primary object in taking and holding it is the public benefit, which alone justifies a taking without the consent of the owner, an incidental object is the hope of profit to be derived by the corporation from the use of it. In this respect the title of the present petitioner in the use of the water does not differ materially from the title to the road-bed of a railroad acquired under the right of eminent domain. The act of the Legislature in granting these water rights is simply a regulation of the public rights in a great pond. It makes subordinate all other public rights which are inconsistent with the exercise of this one. *West Roxbury* v. *Stoddard,* 7 Allen, 158. *Rockport* v. *Webster,* 174 Mass. 385. *Watuppa Reservoir Co.* v. *Fall River,* 147 Mass. 548. *Fay* v. *Salem & Danvers Aqueduct Co.* 111 Mass. 27. *Attorney General* v. *Revere Copper Co.* 152 Mass. 444. It allows the corporation to hold and exercise these rights as a trustee for the public, and at the same time permits it to obtain income in its private capacity

from the sale of the water. It makes no difference that there was no private ownership in the waters of the pond before the enactment of the statute. Land which is taken for a railroad under the right of eminent domain is not acquired and held by virtue of a transfer of the title of the former owner as private property, but by virtue of the public interest which it is taken to subserve. The valuable private interest which the railroad company afterwards has in it is incidental to the public use, but it is none the less a right of property, secured by the franchise.

That the right of the petitioner to use this water was a valuable right, is further shown by the fact that the petitioner was compelled to make compensation to riparian proprietors on the stream flowing out from the pond, whose property was damaged by the taking of the water. To say nothing of other expenses in the construction of the waterworks, all of which were incurred to render valuable these water rights, the payments to mill owners on the outlet stream were made directly for the water itself, to be used for an indefinitely long time in the future. The petitioner's franchise included the use of valuable water rights which should be paid for by the respondent town. See *Commonwealth* v. *Proprietors of New Bedford Bridge*, 2 Gray, 339, 347; *Central Bridge* v. *Lowell*, 4 Gray, 474, 480.

We are of opinion that there was no error in this part of the report of the commissioners. *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482. *West Springfield* v. *West Springfield Aqueduct Co.* 167 Mass. 128. The respondent makes no objection to any other part of the report, but moves that the rest of it be confirmed.

The petitioner presented numerous objections to the action of the commissioners, and moved that their award be recommitted. In the argument, however, it waived these objections and its motion, if the court should determine that the objection of the respondent was not well founded. On the determination which we have made, there is no occasion to consider other questions.

The entry will therefore be

    *Award accepted, and judgment for the petitioner on the award.*