HENRY H. SPRAGUE & others *vs.* JOSEPH F. MINON.

Suffolk.    November 30, 1908. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Lake Cochituate.    Boston.    Eminent Domain.*

The taking by the city of Boston of "all the waters of " Long Pond [now Lake Cochituate] and "all the water-rights thereunto belonging or in any wise appertaining" under authority of St. 1846, c. 167, with regard to the taking of certain waters by that city for the purposes of a water supply, deprived persons claiming a right to the use of such waters as grantees of the Natick Indians, to whom certain grants were made in 1659 by the General Court, of any such rights as they thus acquired, and brought them within the provision of St. 1846, c. 167, as to compensation.

BILL IN EQUITY, filed in the Supreme Judicial Court on July 27, 1906, by the members of the metropolitan water and sewerage board to enforce certain rules and regulations of the board with regard to the use of Lake Cochituate.

In a decision reported in 195 Mass. 581, when the case was before this court upon a report by *Morton,* J., it was ordered that a decree be entered for the plaintiffs. Thereupon the defendant filed a petition to reopen the case, to discharge the report, upon which the case previously was decided, and to vacate the decree entered in accordance with that decision, in order that there might be a rehearing and trial and that evidence, newly discovered by the defendant, might be introduced, as stated in the opinion.

The petition was heard by *Morton,* J., and by him was reported for determination by the full court under the terms stated in the opinion.

*E. C. Bumpus,* for the defendant.

*D. Malone,* Attorney General, & *F. B. Greenhalge,* Assistant Attorney General, for the plaintiffs.

MORTON, J. This case came before this court and is reported in 195 Mass. 581. The question there presented was whether certain evidence offered by the defendant constituted or could be found to constitute, if competent, a defense. It was held that the evidence offered was incompetent and immaterial and

a decree was ordered for the plaintiff. In the opinion then rendered Lake Cochituate was treated as a great pond and as a part of the public domain. . The case comes before us now on a petition by the respondent to set aside and vacate the decree and discharge the report on which the case came up before and for a rehearing on the ground of newly discovered evidence tending to show, it is contended, that Lake Cochituate is not a great pond and that the board of metropolitan water and sewerage commissioners had therefore no right to pass the rules complained of because, as it is alleged, Lake Cochituate, formerly called Long Pond, was granted in fee in 1659 to the Natick Indians. The respondent also alleges that he has acquired by deed from descendants of those Indians the right to use the lake for fishing and boating and other purposes. The case was heard by a single justice upon the petition for rehearing and the petitioner's offer of evidence in support thereof and at the request of the petitioner was reported to this court upon the petition and such offer of evidence. " If the testimony offered by the petitioner would be adequate and material, upon proof, to control the decision of the full court heretofore made, then the case is to stand for hearing; if such testimony is not adequate or material in the premises, then the petition is to be dismissed, or such other disposition made of it as to the full court shall seem meet."

If it were necessary to pass upon the scope and effect of the grant of 1659 relied on by the petitioner (4 Mass. Col. Rec. 408, 409, 428) we should find difficulty in construing it as intended to convey to the Indians forming the plantation at Natick the fee of or any private rights in the great ponds included within the limits of the grant. By the Colony Ordinance of 1641–47 great ponds, meaning ponds of more than ten acres, had been set apart and devoted to the public use (*West Roxbury* v. *Stoddard*, 7 Allen, 158, *Attorney General* v. *Herrick*, 190 Mass. 307), and there is nothing in the grant itself or in the circumstances under which it was made to show any intention on the part of the General Court to except from its operation the tract granted to the Indians at Natick. The grant was to the " Indian Plantation called Naticke " as similar grants were to other plantations and towns. The Indians were allowed to

make deeds subject to the consent of the General Court, and all of the lands included in the grant have been conveyed away by them; but the offer of proof contains no instance in which a deed was made of any part of what is now Lake Cochituate or of land under or rights in the same. A deed of a tract of about two thousand acres was executed by a number of Indians to one Rawson which, it is alleged, included great ponds. But, so far as appears, no private rights or interests in and to any great pond within the bounds described in that deed have ever been asserted in virtue thereof. The deed to Gookin and Howe of lands on the outlet stream conveyed no rights in the waters of the lake except such, if any, as would belong to any riparian owner on a stream flowing from a great pond. Complaints were made by the Indians that others trespassed upon their fishing privileges, and their claim to such privileges seems to have been allowed. But the claim seems to have been allowed rather because it was regarded as a necessary incident of their mode of life that they should have such privileges than as founded on any grant of private rights of property in the great ponds included within the plantation.

But whatever the exact nature of the title acquired by the Indians and their grantors in and to the tract granted to them in 1659 and in and to the waters of the great ponds included in said tract, we are of opinion that the taking by the city of Boston under authority of St. 1846, c. 167, of all the waters of Long Pond (now Lake Cochituate) and other brooks and streams whether permanent or temporary entering into the same, and of all bays, coves and inlets thereof, and of the outlets of the same and of all water rights thereunto belonging or in any way appertaining for the use and benefit of the city, operated to vest in the city of Boston any right or title in and to the waters of that pond belonging at the date of such taking to any individual or community however acquired. It was held in *Martin* v. *Gleason,* 139 Mass. 183, that a prescriptive right to pollute one of the streams entering the pond was included in the taking, and in the opinion in that case, speaking of the statute and of the words, "and any water rights connected therewith" with which the first sentence in § 1 of the act concludes, it is said "It was designed to give a broad and comprehensive authority, for the

purpose of furnishing a supply of pure water for the city; and to confer the power to take everything included within the meaning of the antecedent words, so far as might be necessary for the preservation and purity of the water." The authority thus given was exercised in language as comprehensive as that in which it was conferred and "all of the waters of said Long Pond" and "all the water-rights thereunto belonging or in any wise appertaining" were taken for the sole use and benefit of the city. Any rights, therefore, which the petitioner or his predecessors in title may have had in or to the waters of Long Pond must be regarded as having been lost in consequence of, or extinguished by the taking by the city of Boston under and by virtue of the authority conferred upon it by St. 1846, c. 167. If the petitioner or his predecessors in title had any rights in the waters of Long Pond the taking necessarily deprived them of such rights and brought them within the provisions of that act as to compensation. It is not contended that the city did not have authority to take the waters of the pond. *Sprague* v. *Dorr*, 185 Mass. 10.

The defendant relies upon *Rockport* v. *Webster*, 174 Mass. 385. But no such question was presented in that case as was raised in this. In that case the question was whether the taking by the town of Rockport of the waters of Cape Pond, a great pond, under the provisions of St. 1894, c. 78, deprived the defendant, as one of the public, of the right to cut ice on the pond, and this court held that it did not, — adding, however, in the concluding paragraph of the opinion to prevent misconception that the decision was not inconsistent with the right of the plaintiff to have an injunction against the cutting of ice on the pond if it appeared in the future that the exercise of the right injuriously affected, or was likely to affect the purity of the water. In this case the question was whether, the waters of Lake Cochituate having been devoted to a public use, the Legislature had the right for the purpose of protecting the purity of the water to give the metropolitan water and sewerage board appointed under St. 1895, c. 488; St. 1901, c. 168, the power to exclude the public from using the waters of the pond for boating or otherwise, and it was held that the Legislature had such power and that there was nothing unreasonable in the regulations adopted by

the board in regard to the use of the lake.  So far from there being anything in *Rockport* v. *Webster* inconsistent with the former opinion in this case and requiring a rehearing, the former opinion would seem to be directly in line with the concluding paragraph of the opinion in *Rockport* v. *Webster*.

We see nothing in the offer of proof to affect or control the decision heretofore made or to justify the granting of the petition for a rehearing.

*Petition for rehearing denied.*