FRANCIS SMITH *vs.* INHABITANTS OF CONCORD.

Middlesex. Nov. 12, 1886. — Jan. 6, 1887. HOLMES & GARDNER, JJ.,
absent.

The St. of 1872, *c.* 188, authorized a town, for the purpose of supplying its inhab-
itants with water, to take the waters of a pond and the waters which flowed into
and from the same, and to take and hold lands, and to make dams and lay
pipes; and provided that no application should be made for the assessment
of damages for the taking of any water-rights until the water was actually
taken and diverted by the town, and that any such application must be made
within three years from the time when the water was actually withdrawn or
diverted. The town accepted the statute, took "the waters" of the pond, and
laid a pipe, which was capable of withdrawing a portion only of the water, and
which had but little effect upon the flow of water through the outlet. More
than four years afterwards, the town took "the outlet" of the pond, and land of
A. at the outlet, and constructed a dam on the land. A. filed a petition for the
assessment of damages to his land and water-rights more than three years after
the first taking, but within three years from the second taking. *Held*, that the
petition, as to his water-rights, was filed too late.

PETITION to the Superior Court, filed November 19, 1884, for
the assessment of damages caused by the taking by the respond-
ent of land and water-rights of the petitioner, under the St. of
1872, *c.* 188.* Trial in the Superior Court, before *Rockwell*, J.,
who allowed a bill of exceptions, in substance as follows:

The petitioner introduced evidence tending to show that,
prior to December 1, 1874, he was an inhabitant of Lincoln,
and the owner in fee of land therein, bordering on Sandy Pond,

---

* Section 1 of this act authorizes the town of Concord to supply itself
and its inhabitants with pure water, for domestic and other uses.

Section 2 provides that " said town, for the purposes aforesaid, may take
and hold the waters of Sandy Pond, so called, in the town of Lincoln, and
the waters which flow into and from the same," and take lands, and lay
pipes, build dams, reservoirs, &c.

Section 3 provides that any person sustaining damages by reason of the
taking of any land, water, or water-rights, may have his damages assessed in
the manner provided by law with respect to land taken for highways; that
no application shall be made for the taking of water-rights " until the water
is actually taken and diverted by said town; " and that " any person whose
water-rights are thus taken or affected may apply as aforesaid within three
years from the time the water is actually withdrawn or diverted, and not
thereafterwards."

and at and along the outlet thereof, and of the water-rights connected therewith; that this outlet is the only natural outlet of the pond; and that on December 1, 1874, the respondent town, having duly accepted the statute above named, filed in the registry of deeds a taking of " the waters of Sandy Pond " and of " the land under the same."

Sandy Pond has a surface of one hundred and fifty acres, and a drainage area of three hundred acres. In December, 1874, the town withdrew water from the pond, and constantly since then has withdrawn water, through a pipe, without pumping, the pond being at a higher level than the town. The pipe as laid in 1874, at its greatest capacity, might be capable of taking an amount of water equal to the average yearly rainfall on the surface and drainage area of said pond. The bottom of the pond abounds in many large cold springs, some of larger diameter than the pipe. These springs, there was some evidence tending to show, might be brought from a distance beyond the drainage area by underground strata outcropping in the pond. One witness for the defence testified, however, that they probably were derived from the drainage area, but might come from such strata. From 1874 to July, 1879, there was little or no difference in the amount of water flowing from the pond through said outlet, as compared with the natural flow of said outlet.

On July 12, 1879, the respondent town filed in said registry of deeds its taking " of the outlet " of said pond, and of the land of the petitioner at said outlet, and at that date constructed on said land a dam at said outlet, the effect of which was to cut off the remaining land of the petitioner, of which the land taken formed a part, from the use of the water flowing from the pond.

Since said dam was built, the amount of water flowing in said outlet from the pond has been seriously diminished. This effect of the dam was induced by increasing the head of water at the pipe to increase its capability, and by raising the level of the pond to increase its area above its natural size, thereby increasing the waste of water from leaching and evaporation. The petitioner contended that said dam for the first time completed works capable of appropriating the water of said outlet and the waters of Sandy Pond, and that water was then first diverted from the natural outlet.

A petition claiming damages for the land and water-rights so taken was filed by the petitioner with the county commissioners on July 8, 1882, on which an award was made by said commissioners on November 20, 1883.

All the evidence of the petitioner, so far as it related to damage for water-rights of the petitioner taken or affected, was introduced subject to the respondent's exception; and was subsequently excluded by the judge, who instructed the jury to disregard so much of the evidence as related to said taking of water-rights of the petitioner.

The petitioner made the following requests for rulings: " 1. The St. of 1872, *c.* 188, is to be construed most strongly against the town of Concord. 2. The St. of 1872, *c.* 188, in § 2, makes a distinction between the waters of Sandy Pond and the waters which flow into and ' from the same.' 3. There must be, not merely a constructive, but a literal and actual interruption of or injury to the use of the water-rights of the petitioner in order to render the town of Concord liable for damages. 4. Until the town completed works which were capable of cutting off the water supply or rights of the petitioner, no time of limitation began to run against the petitioner. 5. If the petitioner is found to be the owner of land on either side of the outlet of Sandy Pond, he had at common law a right to use the waters for farm and domestic purposes, and, if the petition was seasonably brought, was entitled to compensation for their interruption by the town of Concord. 6. Under the taking of December 1, 1874, the petitioner could not have recovered damages for water flowing from Sandy Pond, even if the petition had been brought within three years from the actual diversion of water under said taking. 7. The taking of July 12, 1879, of the outlet of Sandy Pond, must be construed to mean a taking of the waters flowing from said Sandy Pond, within the meaning of the statute, if the jury are satisfied that the town of Concord then first completed works capable of appropriating the waters flowing from said Sandy Pond, and then first actually diverted the waters flowing from said pond. 8. The time of limitation of a petition for water damage under this act is to be reckoned from the completion of works capable of appropriating the water-rights in dispute, and from the first actual diversion of the water into such

256     JANUARY, 1887.

works, and it is for the jury to determine whether the pipe of the town of Concord or the other works, excluding the dam at the outlet, constituted works capable of appropriating the waters 'flowing from Sandy Pond.' 9. If the jury are convinced that the town has taken part of the petitioner's land for the erection of a dam at the outlet of Sandy Pond, he is entitled to receive compensation not merely for the land taken, but also for such injury to his remaining land as is caused by the appropriation of a part of it for the uses for which it was taken. 10. If the effect of the appropriation by the town of Concord of part of the petitioner's land to the erection of a dam thereon is to cut off a valuable water-right from the rest of the petitioner's land, of which the lot taken formed a part, and thereby to diminish the value of the rest of the petitioner's land, he is entitled to recover for such injury. 11. If the petitioner is an inhabitant of Lincoln, and owns land in Lincoln at the outlet of said pond, and if a part of his land there was taken by the town of Concord for the purpose of erecting thereon a dam, thereby cutting off water flowing from said pond from the remainder of land owned by the petitioner, then he may recover compensation not merely for the land taken, but also for such injury to the remainder of his land as is caused by an appropriation of a part of it for the uses for which it was taken."

The judge gave the first, third, fifth, and ninth rulings requested; refused to give the others; and ruled, as contended by the respondent, that the petitioner's claim for damages to water-rights was barred by the statutory limitation of three years from December 1, 1874.

The jury returned a verdict for the petitioner for the value of his land taken, exclusive of water-rights; and the petitioner alleged exceptions.

*J. F. Wheeler*, for the petitioner.

*S. Hoar*, for the respondent.

C. ALLEN, J. By the act of taking "the waters of Sandy Pond," on December 1, 1874, the town took all the water of the pond, and was at liberty to draw off the whole of it, by means of pipes large enough for the purpose, and was bound to pay all damages sustained by reason of the taking of the whole of the water of the pond. The fact that the town did not at first put

in a pipe large enough to exhaust all the water of the pond, would not prevent it from doing so afterwards, and would not diminish the damages to which any person injured by the taking of all the water of the pond would be entitled. The right to damages is measured by the quantity of water which the town by its election took and appropriated, not by the quantity actually withdrawn at the outset. *Cowdrey* v. *Woburn,* 136 Mass. 409, and cases cited.

By the second taking, on July 12, 1879, the town took the land in the bed of the outlet, and on both sides thereof, along the shore of the pond, for the purpose of holding and preserving the water; but it did not take any additional water. Indeed, there was no additional water there to take, since the town had taken all the water of the pond in 1874. The time for filing an application for damages for the taking of water had therefore passed, and the ruling of the court was right.

*Exceptions overruled.*