JOHN A. OELSCHLEGER vs. CITY OF BOSTON.

Suffolk. November 20, 1908. — January 5, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & RUGG, JJ.

*Damages,* For property taken or injured under statutory authority. *Stony Brook. Statute.*

Under St. 1896, c. 530, authorizing the city of Boston to alter the course of a certain portion of Stony Brook and make for it a new channel, the street commissioners of that city, in making the takings of land and easements necessary for altering the course of the brook, have no occasion to mention the lands of riparian owners on the former course of the brook from which the water is diverted or the water rights of such riparian owners, which necessarily are taken without any such description.

A riparian owner upon the former course of Stony Brook in Boston from whose land the water has been diverted by the action of the street commissioners in altering the course of Stony Brook under authority of St. 1896, c. 530, although no mention of his land or of his rights in the brook is made in the takings of the commissioners, cannot maintain an action of tort for injury to his land from the diversion of the water, because he has a remedy for damages under the statute, which is exclusive, and because the action of the commissioners is lawful.

TORT by a riparian owner on the former course of Stony Brook in Boston against that city, with a first count for wrongfully diverting the waters of Stony Brook from the plaintiff's land and a second count for constructing a sewer through the former bed of the brook. Writ dated July 26, 1902.

In the Superior Court the case was tried before *Pierce,* J. Certain facts were agreed and the jury took a view of the premises. St. 1874, c. 196, and St. 1896, c. 530, were in evidence, and there also was evidence introduced by both parties upon the question of damages, which is immaterial to the question of law raised by the bill of exceptions. The facts which are material to that question are stated in the opinion.

At the close of the evidence the judge ordered a verdict for the defendant on the second count, and no exception was taken to this ruling. The defendant, among other requests, asked the judge to rule that on all the evidence the verdict must be for the defendant on the first count. The judge refused to make this ruling and submitted the case to the jury on the first count.

The jury returned a verdict for the plaintiff in the sum of $2,674.43; and the defendant alleged exceptions.

*P. Nichols*, for the defendant.

*A. T. Smith*, for the plaintiff.

KNOWLTON, C. J.   The St. 1896, c. 530, § 1, is as follows: "The city of Boston may alter the course of and make a new channel, covered or uncovered, for Stony Brook in the city of Boston, from a point at or near the Tremont Street crossing of the Boston and Providence Railroad to a point at or near Boylston station on said railroad." Section 2 gives a right to the street commissioners to take "for the purpose aforesaid, any lands in said city which they may deem necessary therefor," and to "take any rights or easements in said brook or in any lands which they may deem necessary," etc. If the taking was otherwise than by purchase, they were required to file in the registry of deeds a description of the lands or rights or easements taken.

Acting under this statute, on April 22, 1897, the street commissioners filed in the registry of deeds a statement of a taking "for the purposes specified in section one of this act." This included the fee of one parcel of land, with easements of the right to use several other parcels, all definitely described, with a reference to two plans on file in the office of the superintendent of streets, one of which is entitled "Plan of Taking for Relocation of Stony Brook Channel and Gatehouse, Columbus Avenue, Roxbury," and the other, "Plan of Taking for the Relocation of Stony Brook, Junction Centre and Amory Streets." This taking was duly filed in the registry of deeds, and the city began the making of a new channel for Stony Brook through these lands immediately, and completed the work and turned the brook into the new channel on October 1, 1897. In the parcels in which easements only were taken, there was a reservation to the owners of the "right to erect and maintain buildings over and upon said brook, and to use the waters of said brook, so far as said acts may not obstruct the free flow of said waters, it being the intention of this taking to acquire merely the right to improve the channel of said brook."

These parcels included land on both sides of the brook, beginning at a point a considerable distance up the stream from the

land of the plaintiff, who was a riparian proprietor further down, and extending away from the line of the brook, so that a new channel through the land would take the brook a considerable distance from its former course, away from the land of the plaintiff. In this part the brook in its original channel was crooked and winding. In passing to the plaintiff's land it made a curve, a considerable distance away from its general direction towards the Boylston station. The land and the easements through these several parcels were taken for the purpose specified in §1 of the act, namely, to alter the course and make a new channel for Stony Brook, from a point at or near the Tremont Street crossing of the railroad to a point at or near Boylston station on the railroad. Under the taking the land could be used for no other purpose. Under the statute the taking was an appropriation of the land to this use, which necessarily involved a material change in the course of the brook. This would take away the flow of the stream from the land of riparian proprietors below, until it entered the old channel again, near Boylston station. It was manifest that the land of the plaintiff would be deprived of the flow of the stream as a necessary result of the taking, and of the appropriation of this land to the use specified in § 1. In estimating damages to any one whose property is injuriously affected by a taking of land for a public use, the nature and effect of the use are always considered. A taking for one use may have no detrimental effect upon an estate near by, while a taking for another use may cause special and peculiar damages to such an estate.

The question here is whether this taking by the city gave it a right to use the land for a new channel of the brook, and gave the plaintiff a right to recover damages, under the statute, for this alteration of the course of the brook. We are of opinion that it did. It deprived the plaintiff of the water that previously flowed through his land. The taking of the land for this purpose, coupled with the authority of the city under the statute to use it for this purpose, made it certain from the time of the taking that this alteration of the brook would follow, and would divert the water from the plaintiff's estate. Accordingly he could recover damages under the statute for the taking for this authorized purpose.

The contention of the plaintiff is that the city ought to have gone further and have taken the plaintiff's right to the waters of the brook by name. But the city did not desire to take the waters of the brook as property, and it had no right, under the statute, to take the waters of the brook so as to become the owner of them. Its only right was to alter the course of the brook, and to take such land, rights and easements as it deemed necessary for that purpose. It took all that was necessary to enable it to make the change, and thereby, under the statute, it acquired, with the easements, a right to use the easements for this purpose. When it acquired these easements for this use and thus appropriated them to this use, its right to change the course of the brook was complete, and it was liable to all persons damaged in their property by the taking, and by the change in the course of the stream that was necessarily included in it. It became the owner of the right to make the change, although it did not seek to become the owner of the water for use. So far as the riparian owners on the stream below had a right of property to have the brook flow through their lands, this right was taken by the action of the city under the statute, which gave it a right to change the course of the brook. In its principles the case is like many others under the water acts, where, by some general act of taking, a right to divert water is acquired which gives proprietors on the stream below a right to recover damages for the injurious effect of the diversion upon their property.

Under most of these statutes it is not necessary, nor is it the practice, to mention the rights of riparian owners below, nor to register a taking of their individual rights, beyond a general statement of the taking of that which, under the statute, authorizes a diversion of the water. See *Northborough* v. *County Commissioners*, 138 Mass. 263; *Ætna Mills* v. *Waltham*, 126 Mass. 422; *Smith* v. *Concord*, 143 Mass. 253; *Howe* v. *Weymouth*, 148 Mass. 605. For cases in which the channel of a brook has been altered or improved, see *Washburn & Moen Manuf. Co.* v. *Worcester*, 153 Mass. 494, and cases there cited; *Morse* v. *Worcester*, 139 Mass. 389, 394; *Washburn & Moen Manuf. Co.* v. *Worcester*, 116 Mass. 458; *Boston Belting Co.* v. *Boston*, 149 Mass. 44; *Boston Belting Co.* v. *Boston*, 152 Mass. 307.

We are of opinion, that the defendant was not called upon to

refer to the plaintiff's right in the stream, in order to make the taking one that would give it a right to change the course of the brook, and would give the plaintiff a right to damages under the statute. As his remedy was under the statute, in connection with the taking of land and easements by the city for the alteration of the course of the stream, he cannot recover in an action of tort.

*Exceptions sustained.*