INHABITANTS OF MIDDLEBOROUGH *vs.* CITY OF TAUNTON.

Plymouth.  March 23, 1909. — June 24, 1909.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Damages. Water Supply. Taunton. Middleborough. Assowompsett Pond. Namasket River.*

At the trial of a petition by the town of Middleborough against the city of Taunton under St. 1875, c. 217, § 2, for the assessment of damages to the petitioner's property from the acts of the respondent in pumping water from Assowompsett Pond for a water supply under authority of that statute, the presiding judge refused to rule that "upon all the evidence the petitioner failed to file its petition within the time allowed" by the statute. The section under which the petition was brought provided that damages should be assessed and determined in the same manner as is provided where land is taken for highways, which would require such a petition to be filed before the expiration of one year "from the date of the order providing for" the taking. St. 1875, c. 217, requires no formal taking. The petition was filed on July 1, 1895. The act was accepted by the respondent in 1875, but no action was taken under it until 1892, when the city authorized its water commissioners to do what was necessary to avail itself of the act. On April 10, 1894, the respondent began to pump large quantities of water from Assowompsett Pond into Elders' Pond, but did not construct the dam called for by the act until the autumn of 1894. The pumping into Elders' Pond was in order that the respondent might run the water into its pipes for distribution, and it continued to do this until it completed the dam. On July 2, 1894, an order for taking water from Assowompsett Pond was passed by the city council of the respondent and this order was approved by the mayor on

July 7, 1894. It was under this order that the dam was built. *Held,* that, since the order of July 7, 1894, purported to be the first order directing the things to be done which had to be done to take the waters of Assowompsett Pond, and since that order took the waters of that pond (although such a formality was assumed by the court to have been unnecessary) there was at least a question for the jury upon all the evidence whether the petition filed on July 1, 1895, was not filed within the required time, so that the request for the ruling was refused rightly.

At the trial of a petition by the town of Middleborough against the city of Taunton under St. 1875, c. 217, § 2, for the assessment of damages to a gas and electric plant owned by the petitioner and operated by it with water drawn from the Namasket River, which flows from Assowompsett Pond, by the acts of the respondent in pumping water from Assowompsett Pond for a water supply under the authority of that statute, which authorized the respondent to " construct and maintain a dam at the place where the Assowompsett Pond flows into Namasket River," but provided " that the natural flow of said Assowompsett Pond into the Namasket River shall at all times be maintained," the petitioner, subject to the exception of the respondent, was allowed to introduce evidence tending to show that one element of damage done to it by the respondent's use of the waters of Assowompsett Pond consisted in the fact that the amount of flow of water to which it was entitled at its mill was indeterminate under the taking, and that it was left to the respondent's officials without co-operation on the part of the petitioner to give that amount of water to it. It previously had been held by this court that " the natural flow " which by the statute is secured to the mill owners on the Namasket River is " the flow of the river at the height which is usual in times of ordinary water, when the current is not increased by a freshet, or by recent uncommonly heavy rains." It appeared in evidence that the average yield of water in available horse power at the petitioner's mill before the erection of the respondent's dam varied very greatly in the different months of the year. The respondent contended that it was bound to give the mill owners the natural flow, and, if it did not, that would be ground for an action of tort, so that the petitioner was entitled to no damages under the act on this account. *Held,* that it was competent for the petitioner to prove that the imposition of the limitation of " the natural flow " in the control of the respondent, even if in theory it was not a damage, did in fact impair the market value of the petitioner's water rights, and that the evidence was admitted rightly.

PETITION, filed on July 1, 1895, to the county commissioners of Plymouth, by the town of Middleborough against the city of Taunton, under § 2 of St. 1875, c. 217, called an act to provide the city of Taunton with pure water, to assess damages to a gas and electric plant owned by the petitioner and operated by it with water drawn from the Namasket River, which flows from Assowompsett Pond, by the acts of the respondent in pumping water from Assowompsett Pond for a water supply under authority of that statute, empowering the respondent to " construct and maintain a dam at the place where the Assowompsett Pond flows

into Namasket River," but providing "that the natural flow of said Assowompsett Pond into the Namasket River shall at all times be maintained."

On appeal from the findings of the county commissioners to the Superior Court, the case was tried before *Harris,* J. At the close of the evidence, the respondent asked for certain rulings which were refused by the judge. The tenth of the rulings thus asked for and refused was as follows:

"Upon all the evidence the petitioner failed to file its petition within the time allowed by chapter 217, of the acts of 1875, and hence the petitioner is not entitled to recover any damage."

The judge submitted the case to the jury with instructions, some of which are described and quoted in the opinion. The jury returned a verdict for the petitioner in the sum of $13,-241.50. The respondent alleged exceptions, raising the three questions which are stated and disposed of in the opinion.

*W. A. Swift,* for the respondent.

*E. C. Bumpus,* (*N. Washburn* with him,) for the petitioner.

LORING, J. 1. The tenth ruling asked for was properly refused.

It is provided by St. 1875, c. 217, § 2, that a person injured in his property may have the amount of his damages assessed and determined in the same manner as is provided where land is taken for highways, — that is to say, in the same manner as is provided in section 28 of R. L. c. 48, which provides that a petition for damages may be made at any time before the expiration of one year, (1) in case of taking land, from the day when possession is taken for construction; (2) in case of specific repairs, from the day when the work is begun; and (3) in all other cases "from the date of the order providing for the same."

St. 1875, c. 217, is one of those statutes as to taking waters which do not require a formal taking. See *Bryant* v. *Pittsfield,* 199 Mass. 530; *Bates* v. *Boston Elevated Railway,* 187 Mass. 328, 335; *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365.

Whether under those circumstances the year begins to run from the physical taking of the water or from the order of the respondent which directs the water to be taken, is not of consequence in this case. The order for taking water from Asso-

wompsett Pond was passed by the city council on July 2, and was approved by the mayor on July 7, 1894.

The petition now before us was filed on July 1, 1895. The tenth ruling asked for is founded on this statement in the auditor's report: " The act was accepted by the city in 1875, but no action was taken thereunder until 1892, when the city authorized its water commissioners to do what was necessary to avail itself of the act. On April 10, 1894, the city commenced to pump large quantities of water from Assowompsett Pond, but did not construct the dam called for by the act until the fall of 1894." Beyond this statement it does not appear in the auditor's report that any action was taken by the respondent in 1892, or, if any action was taken, what that action was. Nor does it appear under what authority the city began to pump water from Assowompsett Pond in that year.

It is stated in the report of the case that : " It appeared that the respondent began in April, 1894, to pump water out of the lake into Elders' Pond, before having built a dam, as required by section 2, in order that it might run the same into its pipes for distribution, and continued to do so until the dam was completed, in 1894, when, having finished the dam, it proceeded to regulate the use of the water as required by c. 217. It took no other action concerning Assowompsett Pond than to so pump the water from the river until July 7, 1894, when its duly authorized officials acted in the premises as described in Exhibit A,* which action was registered in the registry of deeds for the county of Plymouth."

If the respondent had stopped pumping water into Elders' Pond and never had passed the votes of July 7, 1894, nor built the dam which had to be built by it if it took the waters of Assowompsett Pond, under the act, the case would seem to have come within *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365. A temporary use is not a taking as matter of law. But however that may be, since the order passed by the city council on July 7, 1894, purports to be the first order directing the things to be done which had to be done to take the waters of Assowompsett Pond, and since that order takes the waters of that pond (a for-

---

, * This was the order already described.

mality which we assume was not necessary) there was at least a question for the jury on all the evidence. The ruling asked for was for that reason rightly refused.

2. The petitioner was allowed to introduce evidence tending to show that one element of damage done to it by the respondent's taking the waters of Assowompsett Pond consisted in the fact that the amount of flow of water to which it was entitled at its mill under the taking was indeterminate, and that it was left to the respondent's officials without co-operation on the part of the mills to give that amount of water to them.

It was held by this court in *Nemasket Mills* v. *Taunton,* 166 Mass. 540, that " the natural flow " which is secured to the mill owners on Namasket River is " the flow of the river at the height which is usual in times of ordinary water, when the current is not increased by a freshet, or by recent uncommonly heavy rains."

Evidence in the case at bar showed that the average yield in available horse power at the petitioner's mill before the erection of the dam was as follows:.

| | |
|---|---:|
| January | 100.4 |
| February | 140.8 |
| March | 218.1 |
| April | 149.2 |
| May | 73.2 |
| June | 23.7 |
| July | 2.9 |
| August | 8.4 |
| September | 9.9 |
| October | 36.7 |
| November | 66.1 |
| December | 85.7 |

What flow of water ought to be maintained under these conditions to meet the definition of " the natural flow " given in *Nemasket Mills* v. *Taunton,* it is not necessary to determine.

The point we have to decide is whether the petitioner ought to have been allowed to prove as an element of the damage done to it by taking the waters of Assowompsett Pond under this act, that " the natural flow " to which the mill owner is entitled is

necessarily a flow of an indeterminate amount, and that in practice it is left to the officials of the respondent, without the cooperation of the mill owners to determine how much water is to be sent down the river to comply with the requirement "the natural flow."

The respondent's position was that it was bound to give the mill owners the natural flow, and if it did not, that was ground for an action of tort.

The petitioner's view, adopted by the presiding judge, was that it was impossible in practice to measure out to the mill owners the exact amount of water which was equivalent to "the natural flow," and since that matter was left to the respondent's officers alone, the very imposition of such a limitation was in fact a damage as the petitioner's evidence showed.

It is now established, as a matter of construction of such an act as St. 1875, c. 217, that any damage in fact suffered by the petitioner can be recovered, even if it is not the infraction of a legal right, provided it is suffered by him and is special and peculiar. *Fifty Associates* v. *Boston*, 201 Mass. 585. We are of opinion that it was competent for the petitioner to prove that the imposition of the limitation in question, even if in theory it was not a damage, did in fact impair the market value of the petitioner's water rights.

3. It appeared that in 1899 the city of New Bedford had taken the waters of Great and Little Quitticus Ponds which originally flowed into Assowompsett Pond, and had built a dam which prevented the flow of water from Assowompsett Pond into these ponds, but which allowed the waters of these ponds to flow into Assowompsett Pond through the early part of the year.

The judge at the respondent's request gave this instruction to the jury: "If the jury find that the city of Taunton and the city of New Bedford both took water from this watershed and that the petitioners sustained damage thereby the petitioner is not entitled to recover its whole damage from the respondent, but only the just and proportionate amount as distinguished from the damage contributed by said city of New Bedford and the burden of proof is on the petitioner to establish and distinguish that amount."

At the conclusion of the charge counsel for the respondent stated to the judge that nowhere in his charge had he instructed the jury that "if the city of New Bedford had taken water from this watershed in conjunction with the city of Taunton, and if the petitioner had failed to show how much water from this watershed the city of New Bedford had so taken, then the petitioner was not entitled to recover." The judge stated that the matter was fairly covered by his charge, and the respondent took an exception.

So far as the exception goes which was taken to the charge, it is enough to say that there was evidence of the damage done to the petitioner's water rights by the respondent's taking the waters of Assowompsett Pond.

Dennis D. Sullivan, "called by the petitioner, and qualified as an expert, testified that the value of the petitioner's real estate, with the water power attached to it, was, in 1895, $75,000, and that the effect upon the value of the plant by the diversion of the water by the city of Taunton was $10,000."

*Judgment on the verdict.*