ALBERT H. TURNER *vs.* INHABITANTS OF GARDNER.
ADA WARFIELD & another *vs.* SAME.

Worcester.    September 29, 1913. — October 22, 1913.

Present: RUGG, C. J., MORTON, HAMMOND, SHELDON, & DE COURCY, JJ.

*Water Supply. Eminent Domain. Limitations, Statute of. Damages,* For property taken or injured under statutory authority. *Gardner. Words,* "Taking."

Under St. 1902, c. 287, which authorizes the town of Gardner for the purpose of supplying itself and its inhabitants with water to take the waters of any brook within the limits of that town, and in § 3 provides that any person injured by any taking who is unable to agree with the town as to the amount of

his damages may have them assessed and determined "on making application at any time within the period of two years after the taking of such land or property or the doing of other injury under authority of this act," a petition for damages arising from the taking and diversion of the waters of a brook cannot be maintained, if it was filed more than two years after the filing in the registry of deeds by the water commissioners of a description of the taking of the waters of the brook, although it was filed less than two years after the first physical diversion of the waters of the brook.

RUGG, C. J. These are petitions brought by a lower riparian proprietor upon Otter River, an unnavigable stream, for damages arising from the taking and diversion of the waters of Perley Brook, a tributary confluent to the river above the petitioners' premises, by the respondent under the authority of St. 1902, c. 287. The question is whether the petitions were brought seasonably. The decision turns upon the construction to be given to several sections of the statute. Section 1 empowers the respondent to "take, by purchase or otherwise, the waters" of any brook within the limits of the town. Section 2 provides that "said town shall, within ninety days after the taking of any . . . water sources . . . otherwise than by purchase or agreement, file and cause to be recorded in the registry of deeds . . . a description thereof sufficiently accurate for identification, with a statement, signed by the water commissioners . . ., of the purpose for which the same were taken." Section 3 provides that any person injured by any taking who is unable to agree with the town as to the amount of his damage may have it assessed and determined "on making application at any time within the period of two years after the taking of such land or property or the doing of other injury under authority of this act; but no such application shall be made after the expiration of the said two years."

The facts are that the water commissioners, who under the statute act for the respondent, on September 14, 1909, "voted that the town of Gardner . . . take" a part of the waters of Perley Brook, and further voted that a description be executed and recorded. Under the same date a formal instrument of taking was prepared, which recited the vote and declared that the town of Gardner "has taken and by these presents does take" the waters of the brook. Two copies of this taking were filed in the registry of deeds differing only in the acknowledgment clause, on September 16 and October 20 respectively, in the year 1909. Physical diver-

sion of the water of the brook was made for the first time on February 23, 1910. These petitions were filed on February 16, 1912. The point is whether the limitation of time within which petitions may be brought under § 3 begins to run from the filing of the instrument of taking or from the date of actual diversion.*

There is no uniformity as to this subject in the form of the many water acts enacted in this Commonwealth. Any apparent diversity in decisions will be found to rest chiefly upon the differences in the form of the several acts under consideration. These differences depend mainly, so far as concerns the present issue, upon the varying significations in which the word "taking" is used. Decisions as to its meaning in one statute and the procedure described by it need to be scrutinized with care before they are given weight as precedents in interpreting it in another. "Taking" is susceptible of different meanings as used in these several water statutes, and even in the same statute may permit different sets of facts to constitute a passing of title. For instance, a literal interpretation of St. 1846, c. 167, under consideration in *Moore* v. *Boston,* 8 Cush. 274, seemed to indicate a plain demarcation between the fact of taking and the filing of the description. At all events, the practical interpretation placed upon it by the conduct of the city of Boston was that a physical appropriation should precede the filing of a description of the land appropriated. The paper filed in the registry of deeds in that case (as described in the opinion of the court) was a mere description of the land, which proceeded upon the assumption that there had been a prior appropriation, the only evidence of which was the actual entry upon the land. It well may be that it would not lie in the mouth of a respondent to assert under such circumstances that its original entry upon the land was a trespass. This consideration has added force since it was plain from § 8 of that act that as to water and water rights the actual diversion was the event from which the statute of limitations began to run. The interpretation placed upon the meaning of the statute was the one upon which the respondent had acted and from which it was endeavoring to escape to its own advantage by putting for-

---

* In the Superior Court the cases were heard by *Bell,* J., who ruled that the petitions could not be maintained because not seasonably filed, and reported the cases for determination by this court.

ward a different one when haled into court for the assessment of
damages. That case is not authority for the proposition that if
under the statute there in question an instrument of taking other-
wise perfect, filed in the registry of deeds, had declared by its terms
that it was itself the taking contemplated by the statute, it would
not have passed title. *Northborough* v. *County Commissioners*, 138
Mass. 263, had to do with the taking of water and water rights and
not of land. St. 1882, c. 192, there interpreted, in § 3 plainly de-
fined the taking of water rights from which the statute of limitations
began to run as the time when "the water is actually withdrawn or
diverted by said town." The decision followed the clear language
of the statute as interpreted by its own words. In that case also
the diversion was made before the description was filed, and unless
the physical act was a taking under the statute it was a trespass.
Moreover, in that case as in *Moore* v. *Boston* the landowner by the
form of his action proceeded upon the theory that the taking was
legal. The same kind of a statute in the respect that the limi-
tation began to run from the actual diversion of the water was
before the court in *Tileston* v. *Brookline*, 134 Mass. 438, and *Ips-
wich Mills* v. *County Commissioners,* 108 Mass. 363, and the
language of the opinions in these cases must be read in reference
to the terms of the statute. The same general observations are
true of several other cases relied on by the petitioners where
the only act of expropriation was the physical one of diversion
without any paper taking filed in the registry of deeds, conduct
which would have been tortious unless performed under the au-
thority of the statute, and it has been held not open to the re-
spondent to deny that it was acting under a legal power when that
assumption was made in its favor by the injured landowner.
*Cowdrey* v. *Woburn*, 136 Mass. 409. *Ætna Mills* v. *Waltham,*
126 Mass. 422. *Bailey* v. *Woburn,* 126 Mass. 416. *Warren*
v. *Spencer Water Co.* 143 Mass. 9, was a case where no provision
was made for a formal taking of water rights, and the defendant
had made an invalid taking of land by which alone it undertook
to obtain access to the source of water supply, and it was held
that an action of tort lay in favor of the landowner both for
trespass upon the land and for diversion of the water. Under
its peculiar circumstances that decision may be sustained, but it
is to be noted that there the landowner brought an action of tort

and did not proceed upon the assumption that the diversion of water was legal. See also *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365; *Bryant* v. *Pittsfield,* 199 Mass. 530; and *Middleborough* v. *Taunton,* 203 Mass. 31. The same may be said of *Wameset Power Co.* v. *Allen,* 120 Mass. 352, and *Lund* v. *New Bedford,* 121 Mass. 286, where, however, the statutes required a filing of a certificate as a condition subsequent to a physical appropriation. Where a city relies upon a taking by law as a defense to an action of tort, it is held to some strictness of compliance with the authorizing statute. See *Lexington Print Works* v. *Canton,* 171 Mass. 414.

On the other hand there are many statutes susceptible of the interpretation that the act of taking may be accomplished by the paper filed in the registry of deeds. Where the instrument of taking declares by its terms that it is itself a seizure of property and property rights by virtue of power conferred by the statute, then it is a taking, and the physical entry upon land or diversion of water, in the absence of any clause in the statute giving it some efficacy, is an immaterial circumstance. *Ham* v. *Salem,* 100 Mass. 350, illustrates this. where it was said, "The taking of the land is effected by filing the description of it in the registry of deeds." In *Lewis* v. *Boston,* 130 Mass. 339, it was said that the point of time from which the three years limitation began to run under St. 1872, c. 177, which refers to St. 1846, c. 167, for its procedure, "begins with the filing of the statement and description in the registry of deeds." In *Howe* v. *Weymouth,* 148 Mass. 605, it was held that, "The taking of the water did not consist in the actual diversion of the water, but in the acquisition of the right to divert it." It is manifest from the rest of the opinion that the "taking" referred to was the instrument recorded in the registry of deeds. In *Lexington Print Works* v. *Canton,* 167 Mass. 341, it was said, "It is settled by many cases that the recorded act of taking fixes the rights of the parties." In *Appleton* v. *Newton,* 178 Mass. 276, at 280, it was decided, the court speaking through Knowlton, J., "There is no doubt that the taking was within the authority which [the statute] purports to give. . . . The filing of this paper in the registry of deeds, . . . was a good taking to pass the title under the statutes." In *Hellen* v. *Medford,* 188 Mass. 42, it was held, "Under the authority of St. 1882, c. 154, § 3, the

park commissioners of Medford took certain land, and . . . filed a certificate as required by the fourth section. No entry ever was made upon the land. The taking was simply on paper. By virtue of the proceedings, however, the respondent became the owner in fee of the land and was bound to pay to those whose estate had been taken the damages respectively suffered by them." This decision was made notwithstanding the fact that the city, never having made an entry upon the land, by deed duly recorded undertook by the authority of a special statute to abandon the land so taken. In *Rockport* v. *Webster*, 174 Mass. 385, it was said respecting a taking by water commissioners, "The act of taking must be performed by the commissioners. . . . The certificate is sufficient proof of taking, and is conclusive upon all concerned."

These cases all arose under statutes nearly enough like that in the case at bar as to the point now to be decided to make them authorities for the conclusion reached in the case at bar.

It was assumed without discussion in *Smith* v. *Concord*, 143 Mass. 253, and *Oelschleger* v. *Boston*, 200 Mass. 425, that the date of filing the paper taking in the registry of deeds fixed the rights of the parties.

The language relied upon by the petitioners in *Dwight Printing Co.* v. *Boston*, 122 Mass. 583, was used in a quite different connection and has no bearing upon the present case. The statutes under consideration in *Heard* v. *Proprietors of Middlesex Canal*, 5 Met. 81, *Call* v. *County Commissioners*, 2 Gray, 232, *Davis* v. *New Bedford*, 133 Mass. 549, are so different from the one at bar as to afford no support to the contention of the petitioners.

If the matter is considered on principle and apart from authority the same conclusion is reached. Eminent domain is one of the high prerogatives of government, which, against the individual and whether he will or not, appropriates real estate to public uses. It is of the utmost importance that the terms of its exercise should be unequivocal and the time when title is transferred should be susceptible of positive proof by a notorious public act. Such a rule is especially in the interests of the landowner. It would be unfortunate in cases of this sort if his rights depended upon a diversion which might be temporary or preliminary in nature and which well might be difficult to observe or ascertain

and as to proof of which he might in many instances be dependent upon his adversary in litigation. Where the statute is susceptible of that construction in reason and no other considerations intervene, it is better to hold that the public and indisputable act of taking as manifested by the written instrument filed in the registry of deeds serves the purpose of a grant and transfers the title. This is accomplished beyond the peradventure of a doubt in carefully drawn statutes. See, for example, St. 1871, c. 361, § 2. See also *Hay* v. *Commonwealth*, 183 Mass. 294; *Imbescheid* v. *Old Colony Railroad*, 171 Mass. 209. It is the effect of the statute involved in the case at bar.

It has been suggested that the petitioners may prevail on the ground that the actual diversion of the water was "the doing of other injury under authority of this act" under § 3, and that therefore their petitions are brought within the time limited. But these words refer to some injury "other" than such as would arise under a taking. The actual diversion of water when made by the respondent was legal by virtue of its previous taking.

It follows that these petitions were not brought within the time allowed by the statute.

*Petitions dismissed.*

*H. W. Blake*, for the petitioners.

*J. A. Stiles*, (*O. A. Hoban & C. S. Anderson* with him,) for the respondent.