E. T. PIERCE JENKS *vs.* MAYOR AND MUNICIPAL COUNCIL OF
TAUNTON.

SAME *vs.* CITY OF TAUNTON & others.

Bristol.    March 29, 1917. — May 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Taunton. Water Supply. Statute,* Construction. *Eminent Domain. Certiorari.*
*Words,* "Either."

In St. 1875, c. 217, § 1, which authorized the city of Taunton for the purpose of
a water supply "to take and hold the waters of either Taunton River . . . or
Elders' and Assowompsett ponds," the authority given was in the alternative,
and, when in 1876 that city exercised its election by taking the waters of the
Taunton River, it lost the right to take the waters of the ponds named and
also the right to take "such land around the margin of said ponds, not exceed-
ing five rods in width, as may be necessary for the preservation and purity of
said waters."

Neither St. 1893, c. 402, § 1, ratifying the right of the city of Taunton "to take
and hold the waters" of the two ponds named above "and the waters flowing
into said ponds, together with any water rights connected therewith, according
to the terms and conditions" of St. 1875, c. 217, nor § 2 of the same statute,
ratifying "the doings and proceedings of the city of Taunton or of its city
council, relating to the taking and holding of the waters of said Elder's Pond
and of said Assowompset Pond, or to the taking and holding of lands in and
about said ponds or elsewhere," gives any authority to the city of Taunton to
take for the purposes of its water supply land on the shore of Assowompsett
Pond.

A right to take the land of a private owner by eminent domain is not to be inferred
from vague general language in a statute.

A petition for a writ of certiorari is the proper remedy to quash proceedings for
the unlawful taking of the petitioner's land by a city for the purposes of its
water supply under the alleged authority of a statute.

PETITION, filed on January 26, 1917, for a writ of certiorari to
quash the proceedings for the taking of land of the petitioner on
the shore of Assowompsett Pond purporting to be authorized
by St. 1875, c. 217, and St. 1893, c. 402; and also a

BILL IN EQUITY, filed in the Supreme Judicial Court on January
18, 1917, by the same landowner to restrain the city of Taunton
from unlawfully taking his land under pretended authority of the
statutes named.

The cases came on to be heard together before *Pierce*, J., who reserved them for determination by the full court.

St. 1875, c. 217, § 1, is as follows: "The city of Taunton is authorized to take and hold the waters of either Taunton River, in the city of Taunton, or in the town of Raynham, or Elders' and Assowompsett ponds in the towns of Lakeville, Middleborough and Rochester, and the waters in said towns which flow into said ponds, together with any water rights connected therewith, and may take and hold, by purchase or otherwise, such land around the margin of said ponds, not exceeding five rods in width, as may be necessary for the preservation and purity of said waters, and may also take and hold such lands as are necessary for maintaining dams and reservoirs for the storage of said waters, and for laying and maintaining conduits, pipes, drains and other works for collecting, conducting and distributing said waters through said city of Taunton: . . ."

St. 1893, c. 402, §§ 1, 2, are as follows:

"Section 1. The right and authority of the city of Taunton to take and hold the waters of Elder's Pond in Lakeville, and of Assowompset Pond in Middleborough and in said Lakeville, and the waters flowing into said ponds, together with any water rights connected therewith, according to the terms and conditions of the two hundred and seventeenth chapter of the acts of the year eighteen hundred and seventy-five, are hereby ratified, granted and confirmed to the same extent to all intents and purposes as if said waters had been the sole waters granted to the city of Taunton by said act.

"Section 2. The doings and proceedings of the city of Taunton or of its city council, relating to the taking and holding of the waters of said Elder's Pond and of said Assowompset Pond, or to the taking and holding of lands in and about said ponds or elsewhere, and for defraying the cost and expenses incurred thereby in furtherance of the purposes of the two hundred and seventeenth chapter of the acts of the year eighteen hundred and seventy-five, and with the intent to carry out the provisions of said act, are hereby ratified, confirmed and declared valid and effectual in law, to the same extent to all intents and purposes as if said waters had been the sole waters granted to the city of Taunton by said act."

*H. L. B. Sampson,* (*N. Washburn & J. B. Angevene* with him,) for the plaintiff.

*J. E. Welch,* (*J. B. Tracy* with him,) for the defendants.

DE COURCY, J.   By the "Act to provide the city of Taunton with pure water," St. 1875, c. 217, the city was authorized "to take and hold the waters of either Taunton River . . . or Elders' and Assowompsett ponds . . . and the waters . . . which flow into said ponds, together with any water rights connected therewith." It seems clear from the context, and from the location and water sheds of the river and the ponds, that "either" was used in the sense of one of two alternatives. The city could take the waters of one or the other of two sources of supply. It could not take both.

Under the authority of this statute the city in 1876 established and put into operation a system of waterworks. It constructed a filter basin and pumping station within the city limits and obtained its supply of water for domestic, fire, manufacturing and other purposes from the Taunton River. In our opinion this election ended its right to take the waters of said ponds and "such land around the margin of said ponds, not exceeding five rods in width, as may be necessary for the preservation and purity of said waters." *Middleborough* v. *Taunton,* 203 Mass. 31, 33.

In 1892 the water commissioners recommended that the city abandon the Taunton River as a source of water supply and take the waters of Elder's and Assowompsett ponds; and the city council duly adopted an order in April of that year authorizing the commissioners to carry out these recommendations. During the year a pipe line from Elder's Pond to the pumping station in the city of Taunton was under construction; and orders were passed purporting among other things to take certain lands on and near Elder's Pond. These orders of April and August, 1892, referred to said statute of 1875 as authority for the action of the city council.

After this, namely in June, 1893, was passed the "Act to ratify and establish the authority of the city of Taunton to take and hold the waters of Elder's Pond and Assowompset Pond in Lakeville and Middleborough." St. 1893, c. 402. The first section of the act ratifies, grants and confirms the authority of the city "to take and hold the waters" of the two ponds "and the waters

flowing into said ponds, together with any water rights connected therewith." The only mention of land is contained in § 2; by which section the proceedings of the city or of its city council above referred to, including those "relating to . . . the taking and holding of lands in and about said ponds or elsewhere," are ratified, confirmed and declared valid. Neither expressly nor by reference does the 1893 statute give the city power to take "land around the margin of said ponds, not exceeding five rods in width," as did the 1875 act. Such a power to take private property without the consent of the owner is not to be inferred from vague general language like that contained in this act. If the Legislature intended to delegate that power to the city, presumably it would have done so in express terms or by necessary implication. *Comiskey* v. *Lynn*, 226 Mass. 210. *Bishop* v. *North Adams Fire District,* 167 Mass. 364, 369. Cooley, Const. Lim. (7th ed.) 565.

We find no authority in either of said water acts for the purported taking of the petitioner's land by the city of Taunton in December, 1916. It is conceded that the city has not obtained the consent and approval of the State department of health to the taking of the land in question. St. 1908, c. 499. St. 1914, c. 792. It further is argued that the order of the municipal council was invalid on other grounds; but these need not be considered, as the statute under which the city acted did not authorize them to take the petitioner's land.

In order to test the validity of the attempted taking the petitioner has brought a petition for a writ of certiorari and a bill in equity. It follows from what we have said that the writ of certiorari must be issued, and the taking by the respondents quashed. *Old Colony Railroad* v. *Fall River*, 147 Mass. 455. *N. Ward Co.* v. *Street Commissioners*, 217 Mass. 381. *Excelsior Needle Co.* v. *City Council of Springfield*, 221 Mass. 34. The bill in equity may be dismissed without prejudice.

*Ordered accordingly.*