The York Shore Water Company *vs.* William B. Card.

York.    Opinion November 24, 1917.

*Rights of water companies and like corporations to abandon proceedings already begun under power of "Eminent domain." Rule as to cities and towns taking land for "ways." Rule as to whether a condemnor of property may abandon same after damages for taking property have been fixed.*

The directors of the plaintiff corporation, in furtherance of its powers of eminent domain, on September 6, 1913, voted to take by purchase or otherwise certain property belonging to the defendant. On December 22, 1913, the company filed in the office of the County Commissioners a description of the property and a declaration that it "has taken and hereby does take" the property so described. The defendant, on July 7, 1914, filed a petition with the County Commissioners for assessment of damages, and after hearing duly had, the commissioners filed their award on November 3, 1914, fixing the amount at eleven hundred dollars. No appeal was taken by the company, but on March 31, 1915, the company gave the defendant a written notice of so called abandonment of the condemnation proceedings and surrender of the property taken thereunder. The defendant disregarded this notice and on the first Tuesday of June, 1916, he filed with the commissioners a petition asking that a warrant of distress issue against the company to compel the payment of the award.

Upon a bill in equity brought by the company to restrain the further prosecution of this petition, it is,

*Held:*

1. That R. S., (1903), Chap. 23, Sec. 7, (R. S., 1916, Chap. 24, Sec. 7), providing that damages for laying out highways are not recoverable until the town has actually entered upon and taken possession of the real estate has no application to the case at bar.

2. That after condemnation proceedings have been perfected and the damages for the land taken have been finally ascertained and adjudged by the proper tribunal, the corporation thereby acquires a vested right to hold and use the land taken on payment of the compensation awarded, and the land owner acquires a vested right to have and recover the damages awarded.

3. The attempted abandonment here came too late. The result of the award was to give the defendant a vested interest in the damages which the company could not avoid at that stage of the proceedings.

Bill in equity asking that defendant be restrained from prosecuting a petition asking the issuance of a warrant of distress to compel the payment of a certain amount of damages on account of the taking by plaintiff company under eminent domain proceedings property belonging to defendant.    Temporary injunction was granted and case was reported to Law Court on bill and answer.    Judgment in accordance with opinion.

Case stated in opinion.

*Ralph W. Hawkes*, for plaintiff.

*John C. Stewart*, for defendant.

SITTING: CORNISH, C. J., SPEAR, KING, BIRD, HANSON, MADIGAN, JJ.

CORNISH, C. J.   The York Shore Water Company was authorized and empowered by its charter "to take and hold by purchase or otherwise any lands or other real estate necessary.   .   .   .   for the protection of said Chase's Pond" its source of supply.   Private and Special Laws, 1895, Chap. 125, Sec. 3, and Private and Special Laws, 1911, Chap. 256, Sec. 3.   "Said corporation shall be liable to pay all damages that shall be sustained by any persons by the taking of any lands or other property  .  .  .  .  ; and if any person sustaining damage as aforesaid and said corporation cannot mutually agree upon the sum to be paid therefor, such person or said corporation may cause the damage to be ascertained in the manner prescribed by law in case of damage by laying out highways."   Section 4.

In furtherance of the power of eminent domain thus conferred the directors of the company on September 6, 1913, voted to take by purchase or otherwise certain land situated on the northerly side of Chase's Pond, a portion of which belonged to this defendant.   On December 22, 1913, the company duly filed in the office of the County Commissioners of York County a declaration and description of said real estate as the first step towards taking the same by condemnation proceedings and in conformity with R. S., (1903), Chap. 56, Sec. 11.   (R. S., 1916, Chap. 61).   This declaration alleged that the company "finds it necessary for its purposes and uses in the protection of the water shed of Chase's Pond in said town of York to take land within the limits of the water shed of said Pond in said town of York, and being duly authorized by law to take such land

whenever it is necessary for its purposes and uses. Therefore said York Shore Water Company has taken and hereby does take a certain tract," as described in a certain plan filed therewith.

The defendant as owner of a portion of the land so taken, on the seventh day of July, 1914, filed with the County Commissioners a petition containing a copy of said taking, asking that board to fix a time for hearing, to view the premises, hear the parties and assess the damages in the manner provided by law. After due notice given to the company, a hearing was had on August 13, 1914, at which both parties were present and participated. On November 3, 1914, the County Commissioners filed their award assessing damages in the sum of eleven hundred dollars and ordering the company to pay that amount to the owner, Mr. Card. No appeal was taken from this award but on March 24, 1915, the company executed and on March 31, 1915, delivered to Mr. Card a written notice of so called abandonment and surrender of the condemnation proceedings and of the property taken thereunder.

After reciting the facts relating to the declaration and description of December 22, 1913, except that it is now said to have been made "with a view of taking the same for the purposes of said corporation as for public use," this notice of abandonment alleges that the company has never entered upon the premises or taken possession thereof, and that it "hereby abandons and surrenders up to you all its right, title and interest if any, in said premises, and thereby notifies you of its intention not to take said property or make any claims thereto under said proceedings."

Mr. Card disregarded this notice of abandonment and on the first Tuesday of January, 1916, more than a year after the award had been made, he filed with the Commissioners a petition, asking that a warrant of distress issue against the company to compel the payment of the award. On February 23, 1916, the company brought this bill in equity to restrain the further prosecution of that petition and upon bond given by the company a temporary injunction was granted. Subsequently the cause was reported to the Law Court on bill and answer.

The main point at issue is the legal right of the company to abandon its eminent domain proceedings at the time it attempted to do so on March 24, 1916.

The first contention on the part of the company is that damages are not recoverable or payable until it has actually entered upon and taken possession of the real estate, and rests its argument upon R. S., (1903), Chap. 23, Sec. 7. This is the chapter regulating the location, alteration and discontinuance of highways, and section 7 relating to the assessment of damages includes this provision: "But said Commissioners or officers shall not order such damages to be paid, nor shall any right thereto accrue to the claimant, until the land over which the highway or alteration is located, has been entered upon and possession taken, for the purpose of construction or use." That clause however has no application to the case at bar. True, the section of this company's charter providing for damages, specified that either the person or the corporation might "cause the damage to be ascertained in the manner prescribed by law in case of damage by laying out highways." But this did not incorporate all the provisions of chapter 23 into the charter. It simply provided a tribunal and the method of procedure in ascertaining the damage. The County Commissioners were thereby made the tribunal to estimate the amount, and any person aggrieved by the estimate could appeal to the Supreme Judicial Court, where the issue could be determined by a jury, or if the parties so agree by a committee of reference. That is the limit of the incorporation.

The rights of the public in the appropriation of an easement in laying out highways are quite different from the rights of a corporation, like a water company, in taking land by right of eminent domain. The reason why the provision is inserted in section 7, that no right to damages accrues to the claimant until the land over which the highway is located has been entered upon and possession taken for the purpose of construction and use is because under section 9, a time not exceeding two years is allowed for making and opening the way and until it is opened the commissioners have the power to discontinue it. In such a case the question of damages is governed by section 10: "When the way is discontinued before the time limited for the payment of damages, the Commissioners may revoke their order of payment and estimate the damages actually sustained and order them paid. Any person aggrieved may have them assessed by a committee or jury as herein provided." In other words the statute permits through discontinuance proceedings the practical abandonment of proceedings for laying out a way and provides for the assess-

ment of such damages as may have been sustained under those conditions. In the case of a taking of land by a public service corporation no such statutory provision obtains.

In *Furbish* v. *Co. Commissioners*, 93 Maine, 117, 130, the court expressed a doubt as to the applicability of Section 10 to cases other than those for land taken for ways and the doubt was well founded. It was evidently not the intention of the legislature to incorporate into the charter of this water company anything more than the words of the act clearly express, the ascertainment of the amount of damage by the same tribunal as estimates damages when a highway is located and with the same rights of appeal to the Supreme Judicial Court. This is the definite limit.

In the second place the plaintiff claims that independent of the statute above considered it had the general right to abandon its eminent domain proceedings at any time before the same were finally closed and rights of appeal had elapsed, even after hearing and award by the County Commissioners.

At what stage a condemnor may abandon condemnation proceedings has been frequently considered by the courts both of England and of this country, and a learned and valuable summary of authorities may be found in the note to *Cunningham* v. *Memphis R. R. T. Co.*, (126 Tenn., 343), 30 A. & E. Ann. Cas., 1058-1062.

These authorities however depend to a great extent upon the general statutes of the respective jurisdictions or the special act under which the condemnation is authorized and therefore in most instances can hardly be regarded as precedents here. Generally speaking they are divided into two groups, one group, holding that the rights of the parties are not vested until the award is paid or the land is occupied, the other group holding that by the confirmation of the award the rights of the parties are vested and abandonment is then precluded. The author of the above note states the principle as follows: "In the absence of statute fixing the time within which a discontinuance may be had, the general rule is unquestioned that an eminent domain proceeding may be discontinued at any time before the rights of the parties have become reciprocally vested." 30 A. & E. Ann. Cas:, 1062, cited above. The question then arises at what stage in the proceedings have the rights of the parties become reciprocally vested? This is answered by our own court in these words: "We regard it settled by the great weight of authority that after such pro-

ceedings have been perfected and the damages for the land taken have been finally ascertained and adjudged by the proper tribunal, the corporation thereby acquires a vested right to hold and use the land taken on payment of the compensation awarded, and that the land owner acquires a vested right to have and recover the damages awarded." *Furbish* v. *Co. Commissioners*, 93 Maine, 117-129.

In that case eminent domain proceedings were instituted by a water company and the company itself petitioned the County Commissioners to estimate the damages. Hearing was had, report filed and at the next regular term of the County Commissioners the report was entered on the docket as accepted and the proceedings closed. Subsequent to this the company attempted to abandon the proceedings and the court held that it was too late. The only difference in facts between that case and the case at bar is that the time of taking an appeal had expired, and the report of the commissioners had been accepted at the next term of the Commissioners Court, and before the notice of abandonment had been given. But we do not regard these differences as affecting the rights of the parties here, and we are of opinion that in this case, as in the Furbish case, the attempt at discontinuance came too late. The acceptance of the report by the same board who had made it was a merely routine matter which affected neither the validity nor the force of the award.

Nor is the fact that the time for appeal in the case at bar had not expired when the notice of abandonment was given, material. The award of the County Commissioners stood as a judgment until and unless it was appealed from. No appeal had been entered when the attempt to abandon was made and none has since been filed so far as the record shows. That award then in this case was existing at the time the abandonment notice was given and the owner of the land had a vested right to have that award paid subject to be divested by an appeal and by a subsequent award by the appellate tribunal. Under these circumstances we think that the criterion laid down in the Furbish case for the limit of the right of abandonment governs here. By its taking the company had acquired a vested right to hold and use the land on payment of the compensation awarded and by the hearing and award Mr. Card acquired a vested right to have and recover the damages awarded. See *Kimball* v. *Rockland*, 71 Maine, 137; *Imbescheid* v. *R. R. Co.*, 171 Mass., 209; *Hellen* v. *Medford*, 188 Mass., 42; *Turner* v. *Gardner*, 216 Mass., 65.

In *State* v. *Bangor and Brewer*, 98 Maine, 114, 128, this court said: "When Bangor and Brewer had each, at a legal meeting of their voters consented to take or purchase the bridge, to make it free as provided in the acts of 1895 and 1901, and the value of the bridge property had been determined, the rights of all parties became vested and the statutes then became imperative upon both cities to pay the price awarded by the committee and to take the bridge under eminent domain as authorized by section 1 of the statute of 1901. The Bridge Company had no option, and neither Bangor nor Brewer could by any action at any meeting called subsequently to that in which the vote had been had, rescind their former vote, or escape the duty imposed by the act of 1901."

In *Sprague* v. *No. Pac. Ry. Co.*, 122 Wis., 509; 100 N. W., 842, it was held that after the report of the commissioners was filed, it had the effect of a judgment and after judgment there can be no discontinuance.

The conclusion at which we have arrived is consistent with justice and fair dealing. To hold otherwise is to make a farce of legal proceedings. To permit a corporation after taking property from its owner by the high hand of eminent domain, and having its value determined by a designated tribunal, and the award made, to then repudiate at its will the entire proceeding and vanish from legal sight, is to play fast and loose with the rights of property. If the award is deemed too large the corporation has its right of appeal, but it cannot substitute abandonment for appeal, otherwise the property of private citizens would be at the mercy of public service corporations.

If the plaintiffs contention is sound, what would hinder a corporation from condemning and abandoning the same property as many times as it might see fit, until finally an award has been secured that is satisfactory? A doctrine that would permit such a procedure would be a travesty on justice. A voluntary nonsuit cannot be taken after an adverse verdict rendered.

We think the safe, sound and logical rule is that concisely stated by the author of the recent digest of Maine Reports as follows: "The result of an award on proper proceedings is to give both parties a vested interest, one to the property and the other to payment, a result which neither can avoid." Lawrence Dig. Vol. 1, page 392.

The entry will therefore be,

*Temporary injunction dissolved.*
*Bill dismissed with costs.*